1  Ali M.M. Mojdehi, State Bar No. 123846
   Janet D. Gertz, State Bar No. 231172
2  **Baker & McKenzie LLP**
   12544 High Bluff Drive, Third Floor
3  San Diego, CA  92130-3051
   Telephone: +1 858 523 6200
4
   Counsel for Debtor
5  Asyst Technologies, Inc.,
   a California corporation
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    OAKLAND DIVISION

11 In re                                    Case No. 09-43246

12 ASYST TECHNOLOGIES, INC., a California    Chapter 11
   corporation,
13                                           **DEBTOR'S DISCLOSURE
                   Debtor.                   STATEMENT DATED DECEMBER
14                                           23, 2009 FOR PLAN OF
                                             LIQUIDATION DATED DECEMBER
15                                           23, 2009**

16                                           **Combined Disclosure Statement and
                                             Confirmation Hearing:**
17                                           Date:       **February 3, 2010**
                                             Time:       **2:00 p.m.**
18                                           Dept:       **220**
                                             Judge:      **Hon. Randall J. Newsome**
19

20      THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY THE COURT AND HAS

21 NOT BEEN FINALLY APPROVED UNDER § 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE

22 SOLICITATION OF ACCEPTANCES AND REJECTIONS OF THE PLAN OF LIQUIDATION DESCRIBED HEREIN.

23 PURSUANT TO COURT ORDER, THIS DISCLOSURE STATEMENT WILL NEVERTHELESS BE USED TO SOLICIT

   ACCEPTANCES AND REJECTIONS OF SUCH PLAN.
24

25

26

27

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130-
+1 858 523 6200

1

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION DATED DECEMBER 23, 2009
SDODMS1/704367.5

## DISCLAIMER

The purpose of this Disclosure Statement is to provide "adequate information," as that term is used in section 1125(a)(1) of the Bankruptcy Code, to enable a hypothetical reasonable member of a Class of creditors or interest holders to make an informed judgment about the Plan before choosing whether to support the Plan or to file an objection to Confirmation. In furtherance of this purpose, the Disclosure Statement sets forth information that (i) summarizes the Plan and alternatives to the Plan; (ii) advises holders of Claims and Interests of their rights under the Plan; (iii) describes the means of performing the Plan; (iv) describes the function of the Liquidation Trust; and (v) assists the Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

The Debtor and its professionals have made a reasonable effort to ensure that this Disclosure Statement contains accurate information; however, the accuracy of the information contained herein cannot be guaranteed. Furthermore, the Debtor's professionals who have assisted in the preparation of this Disclosure Statement have not independently verified the information set forth herein and make no representation as to its accuracy. Nothing contained herein shall, or shall be deemed to, be an admission or a declaration against interest by the Debtor or any other Person for purposes of any existing or future litigation.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein. The delivery of this Disclosure Statement shall not create any implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the materials relied upon in preparation of this Disclosure Statement were compiled. This Disclosure Statement may not be relied on for any purpose other than to determine whether to support or object to confirmation of the Plan, and nothing contained in this Disclosure Statement shall constitute or be deemed advice on the tax or other legal effects of any reorganization or liquidation on holders of Claims or Interests in connection with such reorganization or liquidation.

Some of the information in this Disclosure Statement contains forward-looking statement that involve substantial risks and uncertainties. These forward-looking statements are inherently

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

2

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 2 of
62

speculative in nature.  Actual results and developments are likely to be different, and may be materially different, from those expressed or implied by these statements.

**THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE HOLDERS OF CLAIMS AND INTERESTS WITH SUFFICIENT INFORMATION TO DETERMINE IF THEY WISH APPROVE OR TO OPPOSE THE PROCEDURES REQUESTED BY THE DEBTOR AND OBJECT TO CONFIRMATION.  ANY OBJECTION TO CONFIRMATION OF THE DEBTOR'S PLAN MUST BE FILED WITH THE COURT AND SERVED UPON COUNSEL FOR THE DEBTOR, THE AGENT FOR THE DEBTOR'S SECURED LENDERS, THE COUNSEL FOR UNSECURED CREDITORS' COMMITTEE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THE ABOVE-CAPTIONED CASE NOT LATER THAN JANUARY 20, 2010, UNLESS SUCH DATE FOR OBJECTION IS OTHERWISE EXTENDED BY THE DEBTOR.**

**PLEASE READ THIS DOCUMENT CAREFULLY.  THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMENDS THAT YOU SUPPORT CONFIRMATION.**

## I.    INTRODUCTION

Asyst Technologies, Inc. ("ATI"  "Company" or the "Debtor"), submits this Disclosure Statement for Plan of Liquidation of the Debtor Under Chapter 11 of the Bankruptcy Code (as may be amended, the "Disclosure Statement"). This Disclosure Statement is being distributed to creditors and other parties in interest to explain the Plan of Liquidation of the Debtor Under Chapter 11 of the Bankruptcy Code dated December 23, 2009 (the "Plan") proposed by the Debtor, and to solicit acceptances of the Plan from parties entitled to vote on the Plan.  A copy of the Plan is attached hereto as **Exhibit "A"**. Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed thereto in the Plan (*see* Article 1 of the Plan entitled "Definitions").

On December 19, 2009, the Court entered an order pursuant to Bankruptcy Code section 1125 (the "Scheduling Order") (i) conditionally approving the Disclosure Statement; and (ii) approving the procedures for final approval of (a) the Debtor's proposed Disclosure Statement as

3

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION
SDODMS1/704367.5

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 3 of 62

containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor, typical of the holders of claims against the Debtor, to make an informed judgment with respect to the acceptance or rejection of the Plan and (b) approval of the Debtor's proposed Plan. A copy of the Scheduling Order is included in the materials accompanying this Disclosure Statement. This Disclosure Statement has only been conditionally approved by the Court as containing adequate information as required by the Bankruptcy Code. The Scheduling Order, however, permits the Debtor to solicit acceptances and rejections of the Plan by means of the Disclosure Statement.

**PLEASE NOTE THAT THE COURT WILL NOT CONDUCT AN INDEPENDENT REVIEW OR INVESTIGATION OF THE FACTUAL AND FINANCIAL MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT NOR HAS IT APPROVED OR RULED UPON THE MERITS OF THE PLAN.**

As set forth in the Scheduling Order, no solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and/or a supplemental disclosure statement and section 1125 of the Bankruptcy Code. No entity should rely on any information relating to the Debtor, its business, or the Plan other than that contained in the Disclosure Statement and the exhibits hereto. Unless otherwise indicated, the source of all information set forth herein is the Debtor. Even if you do not vote to accept the Plan, or if you are the holder of an unimpaired Claim, you may be bound by the Plan if the requisite holders of Claims accept it.

Pursuant to section 1128 of the Bankruptcy Code, the Court has scheduled a combined hearing to consider (i) final approval of the Debtor's proposed Disclosure Statement and (ii) confirmation of the Plan (the "Confirmation Hearing"), on February 3, 2010, at 2:00 p.m., (prevailing Pacific Time). The Court has directed that objections, if any, to either the proposed Disclosure Statement or confirmation of the Plan be filed and served so that they are received on or before January 20, 2010, 4:00 p.m. (prevailing Pacific Time).

The classification of Claims and Interests is summarized below, together with notations as to whether each Class of Claims or Interests is Impaired or Unimpaired, under the caption

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

"Classification and Treatment of Claims and Interests."  Additional information regarding voting is contained in the instructions accompanying the Ballots.

## II.    VOTING ON THE PLAN

Class 1 is the only class of creditors entitled to vote on the Plan.  Because the sale of the Debtor's assets (*see* Article V.C - Sale of Substantially all of the Company's Assets) did not generate enough proceeds to pay the Lender Secured Claims in full, it is anticipated that there will be no distributions made to holders of Priority Claims, General Unsecured Claims, and the holders of Interests.  As such, the Debtor believes that, although under the Plan the holders of Priority Claims and holders of General Unsecured Claims will receive an interest in the Liquidation Trust, such beneficial interest in the Liquidation Trust is likely to have no value.

On December 19, 2009, the Court entered the Scheduling Order which among other things, set voting deadlines, scheduled the combined hearing on approving this Disclosure Statement and confirmation of the Plan, and certain related matters.  A copy of the Confirmation Hearing Notice, filed on December 23, 2010, is enclosed with this Disclosure Statement.  It sets forth in detail, among other things, voting and objection deadlines.  The Confirmation Hearing Notice and the instructions attached to the Ballot, if any, accompanying this Disclosure Statement should be read in connection with this Section of this Disclosure Statement.

If you have any questions about the procedure for voting your Claim or the packet of material you received, please contact the Balloting Agent at:

> Asyst Technologies, Inc.
> c/o Epiq Bankruptcy Solutions LLC
> 757 Third Avenue, 3d Floor
> New York, NY 10017
> Telephone:  1-800-411-3486

If you wish to obtain, at your own expense, unless otherwise specifically required by Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 3017(d), an additional copy of the Plan, this Disclosure Statement, or any appendices or exhibits to such documents, please contact the Balloting Agent at the address or telephone number set forth above.  Copies of the Plan and this Disclosure Statement (including all exhibits, schedules and appendices) and all pleadings and orders of the

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200
SDODMS1/704367.5

Case: 09-43246   Doc# 519   Filed: 12/28/09   Entered: 12/28/09 19:40:31   Page 5 of 62

Court (i) are available for no charge on the Balloting Agent's Website at: http://www.chap11epiqsystems.com/asyst and (ii) are publicly available at the Court's general Website at: (http://www.canb.uscourts.gov.)

FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RECEIVED IN THE MANNER SET FORTH IN THE CONFIRMATION HEARING NOTICE NO LATER THAN JANUARY 20, 2010, AT 4:00 P.M. (PREVAILING PACIFIC TIME) (UNLESS OTHERWISE EXTENDED BY THE DEBTOR, THE "VOTING DEADLINE"). ANY BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN SHALL NOT BE COUNTED FOR PURPOSES OF VOTING ON THE PLAN.

**A.  Parties In Interest Entitled To Vote**

Holders of an impaired claim or interest that will not receive or retain any distribution under the Plan in respect of such claim or interest are deemed to reject the Plan under the Bankruptcy Code, and, accordingly, holders of such claims and interests do not actually vote on the Plan. If a claim or interest is not impaired by the Plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests do not actually vote on the Plan.

The Plan Procedures Order sets forth assumptions and procedures for tabulating Ballots that are not completed fully or correctly. A vote may be disregarded if the Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**B.  Classes Impaired Under The Plan**

Class 1 is the Class of Claims Impaired under the Plan and is entitled to vote on the Plan. All other Classes are (i) Claims that are not Impaired under the Plan, which are deemed, under section 1126(f) of the Bankruptcy Code, to have accepted the Plan, and accordingly are not entitled to vote to accept or reject the Plan; or (ii) impaired but will not receive a distribution under the Plan and which are deemed, under section 1126(g) of the Bankruptcy Code, to have rejected the Plan, and

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

accordingly are not entitled to vote to accept or reject the Plan. Acceptances of the Plan are being solicited only from those who hold Claims or Interests in an Impaired Class whose members will receive a distribution under the Plan.

**C.** **Internet Access to Court Documents**

Court documents filed in this Chapter 11 Case as well as the Court's calendar and other administrative matters may be found, downloaded and printed from the Court's website found at http://www.canb.uscourts.gov or at the Balloting Agent's website found at http://www.chap11epiqsystems.com/asyt.

**PLEASE SEE THE ATTACHED PLAN PROCEDURES ORDER AND CONFIRMATION HEARING NOTICE FOR OTHER PROVISIONS CONCERNING SOLICITATION AND VOTING.**

### III.     HISTORY OF THE DEBTOR

**A.** **Background**

a.     ATI's History & Operations

The Company commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 20, 2009 ("Petition Date"). The Company filed this case in order to provide the Company with the protection of the Bankruptcy Code to enable it to preserve the intrinsic value of the Company, to facilitate an orderly sale of its assets, and to maximize the value of those assets for the benefit of the economic stakeholders of the Estate.

The Company was incorporated on May 31, 1984, under the laws of the State of California. The Company became a publicly traded company in 1993. Its common stock was traded on the NSDAQ Global Market under the symbol "ASYT" until trading was suspended on April 30, 2009.

For the Company's 2008 Fiscal Year ended March 31, 2008, the Company's consolidated revenues were $457 million, and through December 31, 2007, the consolidated Company had 16 consecutive quarters of greater than $100 million of quarterly revenue. Through significant cost cutting and margin improvement, the Company reported positive adjusted EBITDA for the Company's Fiscal Quarter ended December 31, 2008.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

Prior to the sales of substantially all its assets pursuant to section 363 of the Bankruptcy Code, the Company was the parent company of eight subsidiaries,[1] located in various jurisdictions worldwide, as follows:

| Entity | Incorporation Date | Place of Incorporation | Ownership Status as of the Petition Date |
|---|---|---|---|
| Asyst Technologies Europe, Ltd. | March 6, 1996 | London, England | 100% owned by ATI |
| Asyst Technologies, GmbH | May 5, 1995 | Dusseldorf, Germany | 100% owned by ATI |
| Asyst Technologies (Far East) Pte. Ltd. | March 25, 1995 | Singapore | 100% owned by ATI |
| Asyst Technologies Taiwan, Ltd. | April 22, 1997 | Hsinchu City, Taiwan | 100% owned by ATI |
| Asyst Technologies Malaysia, Sdn. Bhd. | February 28, 2000 | Kuala Lumpur, Malaysia | 100% owned by ATI |
| SMIF Equipment (Tianjin) Co. Ltd. | December 12, 2000 | Tianjin city, China | 100% owned by ATI |
| Asyst Korea, Ltd. | June 10, 1994 | Ansan City, Korea | 100% owned by ATI |
| Asyst Technologies Japan Holding Co., Inc. | October 1, 2000 | Nagoya, Japan | 99% owned by ATI |

The Company's subsidiary located in Nagoya, Japan, Asyst Technologies Japan Holdings Company, Inc. ("Asyst Japan Holdings") in turn was the owner of an operating company organized and operating under the laws of Japan, Asyst Technologies Japan, Inc. ("ATJ"), formerly known as Asyst Shinko, Inc. In October, 2002, Asyst Japan Holdings purchased a 51.0% interest in ATJ in connection with a joint venture formed with Shinko Electric Co. Ltd. ("Shinko") of Japan. In July 2006, Asyst Japan Holdings purchased an additional 44.1% of ATJ's outstanding capital stock, resulting in an ownership of 95.1%. Pursuant to the joint venture agreement with Shinko, Asyst Japan Holdings could, at any time, be required to purchase the remaining 4.9% equity of ATJ and at the end of calendar 2008, Shinko triggered this purchase obligation. In January 2009, therefore, Asyst Japan Holdings purchased the remaining 4.9% equity interest in ATJ for approximately $14.6 million U.S.

---

[1] Asyst's ownership interests in the above subsidiaries were sold as part of the sales of the Debtor's assets under section 363 of the Bankruptcy Code, excepting (i) the Debtor's ownership interest in Asyst Technologies Japan Holding Co., Inc., the shares of which the Debtor retains as of the date of this Disclosure Statement but believes to be of *de minimis*, value, if any; (ii) Asyst Technologies Malaysia, Sdn. Bhd., which interest the Company retains as of the date of this Disclosure Statement, and (iii) Asyst Technologies Europe, Ltd., which was liquidated under applicable law as of August 19, 2009.

8

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

1    The Debtor believes that this transaction may be avoidable under sections 544 and 548 of the

2    Bankruptcy Code because, at the time of the transaction, this equity interest did not have any value

3    and hereby reserves all of its rights and remedies with respect to such cause of action.

4              b.    ATI's Products

5         The Company's principal business was the provision of automation solutions optimized for

6    the needs of global customers in the semiconductor, flat panel display, and related fabrication

7    industries.  The Company's lines of business were (i) products and services for interface products,

8    substrate-handling robotics, Auto-ID systems, sorters, atmospheric equipment front-end solutions

9    ("EFEMs"), and connectivity software (the "Fab Automation Business"); and (ii) products and

10   services for automated transport and loading systems for semiconductor fabs and flat panel display

11   manufacturers, otherwise known as the Automated Material Handling Systems business (the

12   "AMHS Business").

13             c.    The Fab Automation Business

14        The Fab Automation Business included a wide range of productivity- and yield-boosting

15   technologies.  The Company's product solutions were used in every 300mm wafer fabrication

16   facility in the world and in the vast majority of 200mm facilities that use the standard mechanical

17   interface (SMIF) manufacturing protocol.  The Company's customer's included each of the world's

18   top 20 semiconductor chipmakers and top 20 semiconductor manufacturing equipment companies.

19        The Fab Automation Business solutions were designed to provide protection, swift transport,

20   high-performance handling, and efficient management and tracking of in-process silicon wafers

21   throughout the chip manufacturing process, including Auto-ID solutions that enable the tracking and

22   management of wafers and related information in the fab.  The Company was a market leader in

23   ("EFEMs") providing a clean, high-performance interface between chip making equipment and the

24   factory environment.  In addition, the Company previously offered wafer sorters and a suite of

25   software products designed to facilitate and enhance the management of wafers and information in

26   modern factory environments.

27        The Company's global supply chain strategy included outsourcing most of its Fab

28   Automation Business manufacturing operations to Flextronics Corporation, allowing the Company

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

to focus on its core competency of developing innovative automation technology that enhanced customers' productivity.

        d.    <u>The AMHS Business</u>

The AMHS Business provided customer solutions for semiconductor and flat panel display manufacturing. The AMHS products stored and transported wafers through the hundreds of manufacturing steps involved in the fabrication of advanced chips, and glass display panels used in consumer and commercial applications.

        e.    <u>Intellectual Property</u>

The Company was the owner of certain patents and patent applications, together with all divisions, continuations and continuations-in-part, renewals, extensions, provisionals and reissuances thereof; trademarks, trademark applications, intent-to-use applications or other registrations or applications related to trademarks, trade names and service marks (including brand names, logos and designs); copyrights (including copyrights in computer software, brand names, logos and designs), copyright applications, moral rights and mask work rights; trade secrets, including proprietary confidential information and know-how, technology, technical data, proprietary processes and formulae, algorithms, specifications, customer lists and supplier lists; along with rights analogous to those set forth above anywhere in the world (collectively "<u>Intellectual Property</u>").

        f.    <u>Other Software Assets and Services Offerings</u>

The Company also was engaged in the development, and licensing and service of certain Connectivity Software (SECSIM Pro+, FastFA 200, FastFA 300, Fast TAP, Tool Emulator, Factory Data Integration Manager), and Material Controls Software (Equipment Information Bridge, NexEDA, ConX300, GWGEM, SDR, EDA Client Emulator, EDA Pro) (collectively, the "<u>Software Assets</u>").

In addition, the Company's operations included global service and support capabilities, for optimal performance of customers' total automation solution. As noted above, these service and support functions were deployed in multiple jurisdictions worldwide.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92128
+1 858 523 6200

10

DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

## B.    The Company's Secured Debt

KeyBank National Association ("KeyBank" or "Administrative Agent"), as administrative agent and lender, is the Company's principal secured creditor, pursuant to a senior secured Credit Agreement, dated as of July 27, 2007 (as the same has been amended, modified and supplemented, the "KeyBank Credit Facility"), among the Company and its direct and indirect subsidiaries, Asyst Japan Holdings and ATJ, as borrowers, the lenders from time to time party thereto and KeyBank, as a Lender and administrative agent and lead manager for such Lenders.

At inception in July 2007, the Key Bank Credit Facility was a $137.5 million multi-currency senior secured facility consisting of an $85 million term loan and a $52.5 million revolving line of credit. As of the Petition Date, there was approximately $74.9 million principal amount of the term loan outstanding under the Key Bank Credit Facility.

The Company, Asyst Japan Holdings, and ATJ granted to the Administrative Agent a first priority security interest in and to substantially all of their personal property assets (including, without limitation, the capital stock of any subsidiary owned by the Company, Asyst Japan Holdings and ATJ) pursuant to the US Pledge and Security Agreement executed by the Company, Asyst Japan Holdings, and ATJ in favor of the Administrative Agent. The Company also granted the Administrative Agent (or other local collateral agent) a first priority lien in and to its material real and personal property assets located in Japan, Korea and Taiwan, as applicable pursuant to separate security agreements governed by applicable local law. In addition, each of Asyst Japan Holdings and ATJ granted to Administrative Agent a first priority lien in and to its material real property and personal property assets located in Japan (consisting primarily of certain identified deposit accounts, intellectual property and equity interests in local subsidiaries) pursuant to security agreements governed by Japanese law. Such liens did not extend to the inventory, accounts receivable or other fixed assets of the Japanese subsidiaries. The Company's former subsidiaries located in Taiwan and Korea granted to the Administrative Agent a first priority security interest in and to its material real and personal property assets pursuant to security agreements governed by local law.

The Company also guaranteed the payment and performance of all of the obligations of any other borrower or guarantor under the KeyBank Credit Facility and/or any other loan documents

11

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

pursuant to the Company Guaranty executed by the Company in favor of the Administrative Agent. In addition, each of Asyst Japan Holdings and ATJ guaranteed the payment and performance of all of the obligations of the other non-U.S. borrowers and guarantors under the KeyBank Credit Facility pursuant to that certain Japanese Subsidiary Guaranty executed by Asyst Japan Holdings and ATJ in favor of the Administrative Agent. Similarly, each of the subsidiaries of the Company located in Korea and Taiwan has executed a separate guarantee in favor of the Administrative Agent pursuant to which it has agreed to guarantee the payment and performance of the other non-U.S. borrowers and guarantors under the KeyBank Credit Facility.

The KeyBank Credit Facility also provided for available borrowing to support one standby letter of credit in the amount of $500,000, to guaranty the Company's lease of its Fremont facility. As discussed below, draws were made under the letter of credit in the amount of $500,000 in the period immediately prior to, and following, the Petition Date by the Fremont facility landlord.

Prior to the Petition Date, an industry downturn caused the Company to become out of compliance with certain financial covenants under the KeyBank Credit Facility. The KeyBank Credit Facility was amended three times in the year prior to the Petition Date, in order to maintain compliance and to require repayment (and terminate the ability to borrow under) the revolving credit facility. The Company was in compliance with all covenants (as amended) at December 31, 2008; however, the Company publicly disclosed that it did not expect to be in compliance at March 31, 2009 with the required covenants and was not in compliance with such financial covenants. On April 7, 2009, the Administrative Agent issued a default notice to the Company, ATJ and Asyst Japan Holdings.

## C.    Real Property Leases

The Company leased various facilities under non-cancelable capital and operating leases. Prior to the Petition Date, the Company maintained leased facilities used for its sales and service operations located in Texas, Vermont, Arizona, Colorado, and Massachusetts. In addition, the Company's various subsidiaries in Germany, England, Singapore, Taiwan, Malaysia, China, Korea, and Japan maintained facilities for their operations, which facilities were primarily leased. Most of these facilities have been closed under the Company's pre-bankruptcy restructuring programs or

12

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200

SDODMS1/704367.5

assumed by a purchaser as a part of the post-petition liquidation of the Company's assets, discussed herein. (*See* Article V.C - Sale of Substantially all of the Company's assets).

The Company was headquartered at 46897 Bayside Parkway, Fremont, California 94538 ("Fremont Facility"), which was occupied by the Debtor pursuant to a seven (7) year Industrial Space Lease (Single Tenant Net) entered into with JER Bayside LLC, a Delaware limited liability company, and dated November 29, 2005 ("Lease"). On or about March 7, 2006, all rights and obligations of JER Bayside LLC were assigned to Legacy Partners I Fremont, LLC ("Lessor"), which thereby replaced JER Bayside LLC as the lessor under the Lease.

Under the Lease, Asyst leased approximately 94,429 square feet of industrial/commercial space. Prior to the Petition Date, the Company used the Fremont Facility for its headquarters as well as certain research and development activities. Under the Lease, the Company initially provided a security deposit in the form of a $750,000 irrevocable standby letter of credit, which was subsequently reduced to $500,000. On April 8, 2009, the Lessor through its designee served the Company with a default notice and demanded payment of all amounts due and owing under the lease. Shortly thereafter, the Lessor drew down on the letter of credit, applying $150,014.44 to past due pre-petition rent, and held the remainder of the letter of credit proceeds for future claim.

**D.    Other Debt**

The Company's books and records, including the Company's unaudited balance sheets dated March 31, 2009, reflected total liabilities as of the Petition Date (excluding the Company's obligations to its Lenders) of approximately $21.746 million.

**E.    Intercompany Claims**

As of the Petition Date, the Debtor was owed approximately U.S. $32 million from Asyst Japan Holdings and ATJ. As set forth below, the Debtor is owed: (i) U.S. $25.5 million on account of intercompany loans made to such affiliates, and (ii) $6.5 million related to expenses paid by the Company on behalf of Asyst Japan Holdings and ATJ.

///

///

///

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

13

DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

CASE NO 09-43246

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 13 of 62

|  | Due From ATJ | Due From Asyst Japan Holdings | Total Due From Japan |
|---|---|---|---|
| a) Intercompany Receivable | U.S $5,492,671 | U.S. $1,025,389 | U.S. $6,518,060 |
| b) Intercompany Loan | U.S. $20,000,000 | U.S. $5,500,000 | U.S. $25,500,000 |
| **Total** | U.S. $25,492,671 | U.S. $6,525,389 | U.S. $32,018,060 |

The U.S. $5.5 million due from ATJ reflected in item (a) above relates to the cost allocations from the Debtor of U.S. $4.0 million, plus accrued interest expense of U.S. $1.5 million. The $1.025 million due from Asyst Japan Holdings reflected in item (a) above relate to financing fees owed to the Debtor under the KeyBank Credit Facility. The cost allocations were in place for approximately three and a half years prior to the Petition Date, and were otherwise supported by a methodology and transfer pricing study prepared on the Company's behalf by an outside consultant. The intercompany loans reflected within item (b) were to assist ATJ with liquidity to meet various payment obligations. The Debtor is not aware of any prepetition amounts owed to either ATJ or Asyst Japan Holdings by the Debtor. The Debtor does not believe that there is any valid basis under which ATJ or Asyst Japan Holdings could successfully object to or subordinate the Debtor's claims, as such are reflected above.

As discussed above, ATJ and Asyst Japan Holdings both filed for court protection under the insolvency laws of Japan on April 20, 2009. On July 31, 2009, the Debtor filed (i) a proof of claim in ATJ's bankruptcy proceedings in the amount of U.S. $25,492,671.07, and (ii) a proof of claim in Asyst Japan Holdings' bankruptcy proceedings in the amount of U.S. $6,525,388.94. Under applicable Japanese law, the trustee in the Japan proceedings may object to the Debtor's claims. On or about December 1, 2009, the Debtor received notice from the trustee of ATJ and Asyst Japan Holdings. All of the claims filed by the Debtor against Asyst Japan Holdings have been approved by the trustee in the Japan proceedings and will therefore receive a percentage distribution on that claim in accordance with the priority scheme under Japanese law.

14

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

All of the Debtor's claims filed against ATJ have been denied by the trustee in the Japan proceedings. The trustee in the Japan proceedings asserts that these claims will be set off against other claims against the Debtor held by ATJ. The Debtor is investigating its options in connection with the "assessment procedure" under Japanese law, which is a simplified litigation procedure challenging the Japan trustee's judgment. This filing must be made on or before January 10, 2010. Assuming the assessment procedure action is filed, the court in the Japan Proceedings will render judgment on the objection to the Debtor's claim. If the court dismisses the assessment procedure filing, the Debtor would still have further appellate rights to challenge such judgment.

As of the date hereof, the actual recovery percentage to unsecured creditors of ATJ and Asyst Japan Holdings is unknown, but in light of the uncertainties, and the pending claim objection by the Japan trustee with respect to the Debtor's claim against ATJ, the Debtor's recovery percentage is currently estimated to be no greater than 10 percent.

F.    **Legal Proceedings**

Certain of the Company's former and current directors and officers were named as defendants in two consolidated shareholder derivative actions, captioned *In re Asyst Technologies, Inc., Derivative Litigation*, Case No. 3:06-cv-04669-EDL, filed and pending in the United States District Court for the Northern District of California, Magistrate Judge Elizabeth D. Laporte presiding (the "Federal Derivative Action"). A similar shareholder derivative action initially filed in California state court, and captioned *Forlenzo v. Schwartz, et al.*, has been refiled in federal court and noticed as related to the Federal Action.

Plaintiffs in the Federal Action alleged that certain of the current and former defendant directors and officers backdated stock option grants beginning in 1995 and asserted causes of action for breach of fiduciary duty, unjust enrichment, corporate waste, abuse of control, gross mismanagement, accounting, rescission and violations of section 25402 et. seq. of the California Corporations Code. The Federal Action also alleged that the Debtor and certain of the current and former directors and officers of the Debtor (including Stanley J. Grubel, Tsuyoshi Kawanishi, P. Jackson Bell, Mihir Parikh, Robert A. McNamara, Ashok K. Sinha, James E. Springgate, Anthony E. Santelli, William Simon, Walter W. Wilson, Stephen S. Schwartz, Robert J. Nikl, and Anthony C.

15

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

Bonora) breached their fiduciary duty by allegedly violating section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, and section 20(a) of the Exchange Act. The Federal Action seeks to recover unspecified monetary damages, disgorgement of profits and benefits, equitable and injunctive relief, and attorneys' fees and costs.

The Company is named as a nominal defendant in the Federal Action. The derivative claims under the Federal Action are property of the Estate. On March 25, 2009, the defendants to the action filed a Motion to Dismiss Plaintiff's Second Amended Consolidated Verified Shareholder Complaint. The action was stayed pursuant to 11 U.S.C. § 362 due to the filing of the Debtor's chapter 11 case, and the Defendants' Motion to Dismiss was vacated. The action remains stayed.

**G.    Management and Employees**

Prior to the Petition Date, the Company's Directors and Officers consisted of the following persons:

1.    Stanley Grubel, Director;

2.    Robert A. McNamara, Director;

3.    Anthony E. Santelli, Director;

4.    William Simon, Director;

5.    Walter W. Wilson Director;

6.    Stephen S. Schwartz, President & Chief Executive Officer, Chairman of the Board;

7.    Paula C. LuPriore, Executive Vice President, Chief Operating Officer;

8.    Aaron Tachibana, Senior Vice President and CFO;

9.    Anthony C. Bonora, Executive Vice President, Chief Technology Officer and Asyst Fellow;

10.    Hitoshi Kawano, Senior Vice President, Automation Solutions Group;

11.    Thomas R. Leitzke, Senior Vice President, Global Operations; and

12.    Stephen M. Debenham, Senior Vice President, General Counsel & Secretary.

Prior to the Petition Date, the Company employed approximately 280 full time equivalent employees in California, Texas, Vermont, Arizona, and Massachusetts, including 24 full time

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

equivalents. ATI's employees were not party to any union contract. Immediately prior to the Petition Date, approximately 140 employees were terminated. On April 20, 2009, prior to the Debtor's filing of its chapter 11 bankruptcy petition, Mr. Schwartz resigned any and all positions he held with the Company.

**H.    Equity Interests**

As of January 30, 2009, the Company had issued and outstanding 50,667,669 shares of common stock, of which (a) approximately 41.7% was held by its top ten institutional holders as of December 31, 2008, and (b) approximately 6.02% was held by the directors and the named executive officers of the Company as of June 30, 2008. Two institutional holders each hold over five percent of the voting common shares. There are no other classes of equity with shares outstanding.

**I.    Events Leading to ATI's Chapter 11 Filing**

Unprecedented and unforeseen declines in economic activity across the semiconductor and semiconductor equipment industries, and deteriorating financial markets and a constricted lending environment, created acute pressure on the Company's liquidity and ability to fund operations through recurring cash flows.

As a result of lack of demand industry-wide, the Company experienced declines in sales growth and profitability in both the AMHS and Fab Automation Business segments in Fiscal Year 2009. The current industry downturn, along with the worldwide liquidity crisis and global recession also resulted in a further abrupt and negative impact on the Company's financial results. This, in turn, restricted the Company's ability to obtain working capital under its principal credit facility. The Company also experienced a sustained and significant decline in its share price, thus reducing the Company's market capitalization.

Beginning in the March 2008 time frame, the Company initiated a series of cost-reduction actions across its global operations to reduce operating expenses and sustain working capital and operating cash flows. Starting in November 2008, the Company began reducing operating cash expenses and headcount, and implemented executive pay reductions and reductions in temporary and contractor services in order to stabilize the Company's cash utilization in the hopes of positioning the Company for healthy cash flows and profitability once more regular economic activity returned.

17

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

The Company also paid-down outstanding indebtedness under its principal credit facility with KeyBank and revolving working capital facilities in Japan.

In addition, the Company put in place business process improvements that enabled installation cost reductions, which include better project management, utilization of local resources, and the reduction of outsourced labor. The Company also made several adjustments to its warranty services that enabled some significant cost reductions in connection with the provision of these services. As a result of these activities, the Company was able to see some improvement in AMHS gross margins.

Beginning on or about February 2009, the Company initiated further concerted actions in an effort to maximize value for the Company's stakeholders, improve the Company's balance sheet, and otherwise enhance the Company's cash flow position to a level sufficient to sustain ongoing operations. Although each of the actions mentioned above produced positive results in improving gross margins and cutting costs, they were not sufficient to avoid the Debtor's chapter 11 filing.

The Company therefore commenced its Bankruptcy Case in order to obtain the necessary relief from its creditors to provide the necessary time to effectuate a sale of assets to a third party, thereby preserving the value of the Company and its affiliates for the broader universe of parties in interest, including secured and general unsecured creditors, key customers, and the Company's employees.

## J.      Japan Proceedings

Concurrent with the filing of the Debtor's chapter 11 petition in this Court, the Debtor's affiliates in Japan, Asyst Japan Holdings and its wholly-owned subsidiary, ATJ, sought the protections under the Japanese Corporate Reorganization Law (*Kaisha Kosei Ho*) ("Japan Proceedings"). The case commenced with the issuance of a commencement decree immediately following filing and shortly thereafter a trustee was appointed by the Japanese court. Similar to a chapter 11 proceeding, the proceeding is designed to protect the debtor's assets during the reorganization proceedings and to revitalize the corporation while providing reasonable repayment to creditors. The proceedings provide for the filing of a plan of reorganization, which is generally

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

submitted by the court-appointed trustee.  The debtor may propose a sale of the business or of assets, either before or following the filing of a plan.

**IV.  SIGNIFICANT EVENTS SINCE COMMENCEMENT OF THE CHAPTER 11 CASE**

**A.  <u>Use of Cash Collateral</u>**

On April 21, 2009, ATI filed its Emergency Chapter 11 First Day Motion to Approve Stipulation By And Between Debtor and Administrative Agent (1) Authorizing Debtor To Use Cash Collateral; (ii) Granting Replacement Liens; (iii) Granting Adequate Protection; (iv) Modifying Automatic Stay; and (v) Setting a Final Hearing for Approval of Stipulation (the "<u>Cash Collateral Motion</u>").  Pursuant to the Cash Collateral Motion, the Debtor obtained approval of a Stipulation entered into with the Administrative Agent pursuant to which the Administrative Agent consented to the Debtor's use of the Lenders' cash collateral for day to day operating expenses and expenses of the administration of the estate, under the parameters of a budget approved by the Lenders.  The Court granted the Cash Collateral Motion on an interim basis on April 29, 2009 and, after a final hearing held on May 18, 2009, the Court granted the Cash Collateral Motion on a final basis on May 21, 2009.

Pursuant to the Order approving the Cash Collateral Motion, any other party in interest other than the Debtor (including the Committee) had until July 15, 2009 (the "<u>Investigation Period</u>") to file a complaint pursuant to Bankruptcy Rule 7001 or a contested matter seeking to invalidate, subordinate or otherwise challenge the Debtor's pre-petition obligations to the Lenders and/or the Administrative Agent's pre-petition liens upon and security interests in the pre-petition collateral; or seek or assert any claim against the Administrative Agent or the Lenders on account of or related to the same.  No claims were filed before the expiration of the Investigation Period.

**B.  <u>Miscellaneous First-Day Orders</u>**

Upon or shortly after the Petition Date, the Debtor filed a number of motions designed to allow it to continue operating its business in the ordinary course without unnecessary disruption as a result of the bankruptcy filings. Pursuant to those motions, the Court entered several orders that, among other things, granted the Debtor authority to: (i) retain various professionals; (ii) establish

19

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION
SDODMS1/704367.5

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40.31    Page 19 of 62

procedures for providing adequate assurance to utilities; (iii) maintain existing bank accounts and continue use of its cash management system; (iv) establish procedures for payment of professionals; and (v) pay prepetition wages and salaries, taxes and insurance. The various first-day orders can be viewed without charge at http://www.chap11.epiqsystems.com/asyst.

### 1. Retention of Professionals

The Court approved the Company's retention of Baker & McKenzie, LLP as general bankruptcy counsel for the Debtor; and AlixPartners, LLP, as financial advisors for the Debtor. Martine, Penilla, Gencarella, LLP was appointed as intellectual property counsel for the Debtor. In addition, the Court appointed Epiq Bankruptcy Solutions LLC as claims, noticing and balloting agent.

### 2. Appointment of Official Committee of Unsecured Creditors

On April 28, 2009, the United States Trustee appointed the Committee. The Committee consists of Saguaro Technologies, Inc.; Bowne of Los Angeles, Inc.; Applied Ceramics, Inc.; Aeronet, Inc.; and Elite Network, Inc. On July 23, 2009, the Court approved the Committee's retention of Arent Fox, LLP as counsel, and BDO Seidman, LLP as financial advisors, each effective as of April 28, 2009.

### 3. Claims Bar Date

The Court established a general claims bar date of August 17, 2009. As of that date, approximately 288 claims had been filed as unsecured claims, out of a total of 524 claims filed against the Debtor. The general unsecured claims filed amounted to approximately $39,242,600. A number of the Claims filed against the Debtor's estate will be disputed and resolved in accordance with applicable law.

### C. Sale of Substantially all of the Company's Assets

### 1. Prepetition Marketing.

In December 2008, the Company began to explore the opportunities for the sale of its flat panel display business unit. In February 2009, the Company also began to explore other strategic alternatives for the Company as a whole, including, without limitation, (a) the restructuring or refinancing of the KeyBank Credit Facility and/or the working capital credit facilities of Asyst's

20

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92128
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION
SDODMS1/704367.5

Japan entity, ATJ; (b) a third-party equity investment in the Company; (c) a sale of all or a substantial portion of the assets of, or business divisions of, the Company and its subsidiaries; and (d) a sale of the Company and its subsidiaries or other merger or business combination transaction involving the Company and its subsidiaries (collectively, the "Strategic Transactions").

Numerous potential parties were contacted to pursue the Strategic Transactions with the Company, including certain of the Company's key customers and suppliers, and several direct competitors. Although several parties expressed interest in a transaction, none of the discussions presented opportunities that would allow the Company to move forward a Strategic Transaction on a timeline that would have allowed the Company to avoid the necessity of a bankruptcy filing.

By agreement dated April 8, 2009, the Company, Asyst Japan Holdings, and ATJ engaged the services of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") to assist the Company and its Japanese subsidiaries in identifying potential financing sources to bridge them through their current short-term cash needs, solicit interests for a sale transaction, and to provide the associated services in the areas of financial restructuring and valuation. Houlihan Lokey contacted numerous potential parties to pursue strategic and financial transactions, including twenty-nine private equity and financial firms, and twelve strategic partners. Following such contacts, four private equity and financial firms made written proposals for proposed acquisition or financing transactions, one strategic purchaser made a similar written proposal, and one strategic purchaser indicated strong interest.

**2.     Coordination of U.S. and Japan Sales Process**

The United States case and Japan Proceedings required close coordination between the insolvency proceedings in Japan and the United States to ensure a successful outcome in each. Following the Petition Date, the Debtor and its professionals, in consultation with its Lenders and the Committee, worked with multiple potential purchasers of the estate's assets, in whole or in part, in an attempt to maximize the realization of value to the Estate. The fact that the Debtor's operations involved independent, but complementary, businesses, and the fact that the AMHS Business shared important synergies with the ATJ entity, created unique dynamics and challenges for the Debtor and its professionals in managing the sale process.

21

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92120
+1 858 523 6200

SDODMS1/704367.5

On June 2, 2009, the Debtor filed its Motion to (i) Establish Sales Procedures and (ii) Schedule Hearing on Motion for Sale of Substantially All Assets of the Estate Free and Clear of Liens and Interests Pursuant To 11 U.S.C. § 363 (the "Sale Procedures Motion"). Pursuant to the Sale Procedures Motion, the Debtor obtained the Court's approval for the bidding procedures to be utilized in connection with an auction for the sale of substantially all of the assets of the Estate, in particular that coordinated auctions would be held in the U.S. and Japan Proceedings. The sale of the Japan assets was effectuated by means of sealed bids, rather than an auction. The auction of Debtor's assets was structured to proceed on the day following the bid submission date in Japan, it being understood that the bidders for the Debtor's assets would not know the outcome of the Japan process. Buyers interested in acquiring the Debtor's assets in conjunction with the Japan assets were allowed to submit bids contingent upon the bidder also being the successful bidder in Japan Proceedings. Likewise, buyers interested in acquiring the Debtor's assets in conjunction with the Japan assets were allowed to submit bids in the Japanese Proceedings contingent upon the bidder also being the successful bidder in these proceedings.

The Court entered its Order approving the Sale Procedures Motion on June 8, 2009 ("Sale Procedures Order"). On June 8, 2009, the Company filed it Motion to Approve Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases and for Determination of Cure Amounts; and to Establish Objection Deadline Regarding Assumption and Assignment of Executory Contracts and Unexpired Leases ("Contract Procedures Motion").

a.    The Sale of the Japanese Business to Murata Machinery, Inc.

Pursuant to the Sale Procedures Order and the accompanying Bid Procedures, a cross-border auction was held on June 8, 2009 and June 9, 2009 for which sealed bids were submitted by bidders by 4:00 p.m. on June 8, 2009 Pacific Daylight time for the Asyst U.S. Assets and by 10:00 a.m. on June 9, 2009 Tokyo time for the Japan assets. The successful bidder for the Japan assets was Murata Machinery, Ltd. (together with its subsidiaries, "Murata"), with a bid of approximately US $115 million, at the applicable exchange rate, contingent upon its successful purchase of the Debtor's AMHS Business.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/704367.5

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

Murata entered into a purchase agreement dated June 12, 2009, with the trustee in the Japan Proceedings, pursuant to which Murata has agreed to purchase substantially all of the assets, contracts and properties of the Asyst Japan Holding and ATJ, as well as their direct subsidiaries (the "Japan Subsidiaries") and to assume certain obligations and liabilities of the Japan Subsidiaries, on terms and conditions more particularly described in the purchase agreement.  This sale closed on August 6, 2009 and the proceeds of the sale were paid to the trustee in Japan for distribution to creditors under the priority scheme set forth under Japanese law.

### b.    The Sale of the AMHS Business to Murata

The highest bidder for the Debtor's assets submitted a bid of $5 million, contingent upon it being the successful bidder for the Japan assets, which it was not.  After consulting with the Lenders and the Creditors Committee, no backup bids were accepted by the Debtor in connection with the auction for the ATI assets.

Faced with a failed auction, the Debtor, in consultation with its professionals, its Lenders, and the Committee, proceeded to investigate various options for the sale of the AMHS Business, the Fab Automation Business, and the Software Assets, to one or more buyers, including, without limitation, to determine whether a sale might be negotiated with Murata and/or  any of the other bidders who previously had been designated as qualified bidders in connection with the auction for the Debtor's assets.

The Debtor after extensive negotiations, and after consulting with the Lenders and the Committee, entered into a definitive Asset Purchase Agreement dated July 10, 2009 with Murata (the "AMHS Purchase Agreement") for the purchase of the AMHS Business.  The AMHS Purchase Agreement provided for the sale of all of the Debtor's assets related to the AMHS Business, including without limitation, the sale to Murata of all right, title, and interest in the Debtor's shares of Asyst Japan Holding and the Intellectual Property relating to the Company's AMHS Business, free and clear of claims, liens, and encumbrances of any kind under section 363 of the Bankruptcy Code for $5.5 million.

On July 16, 2009, the Debtor filed its Motion for Order (I) Approving (a) Sale of Assets and (b) Sale Free and Clear of Liens; and (II) Authorizing Assumption and Assignment of Certain

23

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/704367.5

Executory Contracts and Unexpired Leases, requesting approval of the sale of the sale of the AMHS Business to Murata (the "AMHS Sale Motion") and on August 4, 2009, the Court entered its Order granting the AMHS Sale Motion. The AMHS Purchase Agreement closed on August 6, 2009.

**3.     The Sale of the Fab Automation Business to Crossing Automation**

On July 29, 2009, the Debtor filed its Motion (the "Crossing Automation Sale Motion") for approval to Sell Property Free and Clear and Authorizing Assumption and Assignment of Certain Executory Contracts to Crossing Automation, Inc., a Delaware corporation, or one or more of its designated subsidiaries ("Crossing Automation"). Pursuant to the Purchase Agreement entered into by the Debtor with Crossing Automation, the Fab Automation Business, including Intellectual Property (including the Debtor's Visual Analysis and Optimization software products) relating to the Fab Automation Business, was to be sold to Crossing Automation, free and clear of claims, liens, and encumbrances of any kind under section 363 of the Bankruptcy Code for $6.5 million. Included in the assets sold to Crossing Automation were the following Debtor subsidiaries:

1.     Asyst Technologies, GmbH

2.     Asyst Technologies (Far East) Pte. Ltd.

3.     Asyst Technologies Taiwan, Ltd.

4.     SMIF Equipment (Tianjin) Co. Ltd.

5.     Asyst Korea, Ltd.

On August 31, 2009, the Court entered its Order granting the Crossing Automation Sale Motion The sale of the Fab Automation Business to Crossing Automation closed on September 1, 2009.

Following the closing of the sale, on September 29, 2009, Crossing raised certain assertions and demands against the Debtor in connection with the transaction, alleging that the Debtor had violated the terms of the Purchase Agreement, by (i) failing to turn over any cash payments made by customers to the Debtor between the date of the parties' execution of the Purchase Agreement and the closing of the transaction on September 1, 2009; (ii) failing to conduct its business in the ordinary course during the pre-closing period, thus harming relationships with former customers of the Company; and (iii) improperly withholding certain post-closing collections.

24

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

SDODMS1/704367.5

Case: 09-43246     Doc# 519     Filed: 12/28/09     Entered: 12/28/09 19:40:31     Page 24 of 62

1    The Debtor disputes each of these claims, and believes them to be entirely without merit.

2    Furthermore, the Debtor believes that each of Crossing Automation, Intel, Inc., and/or Flextronics,

3    Inc., in conjunction with certain former employees of the Company, acted improperly, including

4    without limitation, in connection with certain actions relating to cash payments made or being made

5    by Intel to the Debtor, which actions were taken immediately prior to the closing of the sale of the

6    Fab Automation Business to Crossing Automation.  The Debtor believes that it may have claims

7    against such persons in connection with such actions, including without limitation, claims for

8    violation of the automatic stay.  The Debtor has obtained an order from the Court dated October 20,

9    2009 authorizing the Debtor to issue subpoenas for documents and testimony to each of Crossing

10   Automation, Intel, Inc.; Flextronics, Inc.; and Randy Clegg pursuant to Bankruptcy Rule 2004.

11        **4.        The Sale of Certain Software Assets to Peer Group, Inc.**

12        Also on July 29, 2009, the Debtor filed its Motion (the "Peer Group Sale Motion") for

13   approval to Sell Property Free and Clear and Authorizing Assumption and Assignment of Certain

14   Executory Contracts to The PEER Group Inc., an Ontario corporation, or one or more of its

15   designated subsidiaries or affiliates ("Peer Group").  Pursuant to the Purchase Agreement entered

16   into by the Debtor with Peer Group, the Software Assets were to be sold to Peer Group, including

17   Intellectual Property related to the Software Assets not sold to Crossing Automation, free and clear

18   of claims, liens, and encumbrances of any kind under section 363 of the Bankruptcy Code for $2

19   million.  On August 25, 2009, the Court granted the Peer Group Sale Motion.  The sale of the

20   Software Assets to Peer Group closed on August 26, 2009.

21   **D.        Resolution of Fremont Facility Lease**

22        As set forth above, the Lessor of the Fremont Facility was holding the balance of the

23   proceeds ($349,985.56) drawn on the letter of credit to pay claims under the Lease.  The Debtor

24   contended this amount should be set off against administrative rent, a position the Lessor has

25   disputed in motions filed with this Court, [Docket Nos. 90 and 199], (collectively, the

26   "Administrative Rent Motions").

27        The Debtor, pursuant to a stipulation between it and the Lessor approved by the Court on

28   July 22, 2009 [Docket No. 248], was in continuous use and occupancy of the Fremont Facility until

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/704367.5

approximately August 31, 2009, when it entered into a short-term sublease ("Sublease") with Crossing Automation.  By the terms of the Sublease, the Debtor subleased to Crossing a portion of the Fremont Facility, as more particularly described in the Sublease.  Under the Sublease, Crossing paid the Debtor the amount of $60,764.41 per month., for the months of September and October 2009.

The Debtor also entered into a certain Stipulation Resolving Administrative Rent Motions with the Lessor, dated as of August 25, 2009 ("Settlement"), pursuant to which the Debtor and the Lessor.  Under the Settlement, the Debtor shall pay the Lessor rent for the months of September and October, 2009, in a reduced amount of $60,764.41 per month in full satisfaction of the Debtor's Lease obligations for the months of September and October, 2009.  Additionally, the Fremont Lease shall be deemed rejected as of October 31, 2009 and the balance of letter of credit proceeds shall be applied to satisfy the Lessor's allowed rejection damage under section 502(b)(6) of the Bankruptcy Code and the balance returned to the Estate.

The rights of the Debtor, any Trustee that may be appointed in this case (including the Liquidation Trustee) , or any other party in interest to bring an objection to claim, shall not be prejudiced, except to the extent that any such objection to claim is inconsistent with the Debtor's agreement with the Lessor that the new lease entered into by the Lessor and Crossing Automation, Inc. represents reasonable mitigation.

The Debtor filed a motion to approve the Settlement and filed a motion to reject the Fremont Lease pursuant to the provisions of 11 U.S.C. § 365.  The Court approved both the Settlement and the Debtor's rejection of the Fremont Lease by Orders entered on November 2, 2009.

**E.**     **The Current Status of the Debtor**

The Debtor ceased active business operations as of September 1, 2009.  The remaining employees were terminated (many of whom were offered positions with the acquirers of the Debtor's assets) except for Mr. Tachibana, Senior Vice President, Chief Financial Officer; Paula C. LuPriore, Executive Vice President, Chief Operating Officer and the Debtor's Responsible Person (who is part-time); as well as a skeletal crew of key personnel.  The Debtor's miscellaneous assets of

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION
SDODMS1/704367.5
Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 26 of 62

*de minimis* value (such as computers, furniture, and other office equipment) were sold to a liquidator for consideration of $20,000.00 pursuant to this Court's Order dated October 1, 2009.

As of the date of this Disclosure Statement, the Debtor's remaining assets are believed to consist of Cash, Litigation Causes of Action, other intangibles, the books and records of the company (including the corporate minute books and legal, finance and human resources records), and the shares of the Debtor's wholly owned subsidiary, Asyst Technologies Malaysia, Sdn. Bhd., which entity will be liquidated under the local laws applicable to its jurisdiction of incorporation.

## V.     SUMMARY OF THE PLAN

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE OF THE PLAN AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. IT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS ANNEXED TO THIS DISCLOSURE STATEMENT AS EXHIBIT "A".**

**THE SUMMARIES OF THE PLAN AND OF OTHER DOCUMENTS REFERRED TO HEREIN DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THOSE DOCUMENTS. FOR THE FULL AND COMPLETE STATEMENTS OF THEIR TERMS AND PROVISIONS, PLEASE REFER TO THE PLAN ATTACHED HERETO AS EXHIBIT "A".**

**THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR AND OTHER PARTIES IN INTEREST.  IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN OR THE OTHER OPERATIVE DOCUMENT WILL CONTROL.**

A.     **Classification Overview**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims of a debtor's creditors and the claims of its interest holders. In accordance with section 1123, the Plan

27

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Claims and Fee Claims). The Debtor is required, under Bankruptcy Code section 1122, to classify Claims against and Interests in the Debtor into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class.

The Debtor believes that the Plan has classified Claims and Interests in compliance with the provisions of section 1122; however, it is possible that a holder of a Claim or Interest may challenge the classifications of Claims and Interests and that the Court may find that a different classification is required for the Plan to be confirmed. In that event, the Debtor intends, to the extent permitted by the Bankruptcy Code, the Plan, and the Court, to make modifications to the classifications under the Plan to permit confirmation. Any such reclassification could adversely affect the Class in which such holder initially was a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. Furthermore, a reclassification of a Claim or Interest after approval of the Plan could necessitate a re-solicitation of acceptances of the Plan.

**B.**     **Unclassified Claims**

In accordance with Bankruptcy Code section 1123(a)(l), Unclassified Claims against the Debtor consist of Administrative Claims and Fee Claims.

**1.**     **Administrative Claims and Fee Claims**

Unless otherwise provided for in the Plan, each holder of an allowed Administrative Claim or allowed Fee Claim shall be paid 100% of the unpaid allowed amount of such Administrative Claim or Fee Claim in Cash on or as soon as reasonably practicable after the Distribution Date. Notwithstanding the immediately preceding sentence: (i) any Administrative Claims for goods sold or services rendered representing liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case involving trade, service or vendor Claims, subject to compliance with any applicable Bar Date, shall be paid by the Debtor or Liquidation Trustee in the ordinary course in accordance with the terms and conditions of any agreements relating thereto; and (ii) Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees. Notwithstanding the foregoing,

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200
SDODMS1/704367.5

the holder of an allowed Administrative Claim may receive such other, less favorable treatment as may be agreed upon by such holder and the Debtor or Liquidation Trustee, as applicable.

Notwithstanding anything to the contrary in Section 2.1 of the Plan or otherwise, Proofs of claim or applications for payment of Administrative Claims and Fee Claims arising before the Effective Date must be filed with the Court, with copies to the parties listed in Section 11.3 of the Plan within 45 days after the Effective Date. Any Person that fails to file such a proof of claim or application with the Court within that time shall be forever barred from asserting such an Administrative Claim or Fee Claim against the Debtor, the Estate, or its property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover any such Administrative Claim or Fee Claim.

## C. Classification and Treatment of Claims and Interests

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Fee Claims, as described in Article 2 of the Plan, have not been classified and thus are excluded from the Classes that follow. The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by the Plan, and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan.

|  | Class | Status | Voting Rights |
|---|---|---|---|
| **Class 1** | Lender Secured Claims | Impaired | Yes |
| **Class 2** | Priority Claims | Impaired | No (deemed to reject) |
| **Class 3** | General Unsecured Claims | Impaired | No (deemed to reject) |
| **Class 4** | Interests | Impaired | No (deemed to reject) |

### 1. Class 1 - Lender Secured Claims

(a) <u>Classification</u>: Class 1 consists of Lender Secured Claims.

(b) <u>Treatment</u>:  Class 1 is impaired.  Each holder of an allowed Lender Secured Claim shall receive the sum of (i) Cash on hand as of the Distribution Date, less the Wind-down Reserve, (ii) when available, any additional proceeds of the Lenders' collateral including, but not limited to, the proceeds of any Non-Debtor Intercompany Claims, (iii) following payment in full of

29

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

allowed Fee Claims and Administrative Claims, the excess, if any, of the Wind-down Reserve attributed to Administrative Claims and Fee Claims, (iv) on the final Distribution Date, the remaining balance, if any, of the Wind-down Reserve, and (v) a Class 1 beneficial interest in the Liquidation Trust as set forth in Section 5.10 of the Plan, entitling such holder to receive on account of such Claims, on or as soon as reasonably practicable after the initial Distribution Date and on each periodic Distribution Date thereafter, its Ratable Share of any Cash distribution from the Distribution Fund which constitute Net Proceeds of the Lenders' collateral under the KeyBank Credit Facility which are received by the Liquidation Trustee after the initial Distribution Date. Each holder of an allowed Class 1 Claim shall receive such distributions from the Liquidation Trust in accordance with the provisions set forth in Section 6.10 of the Plan. Any Deficiency Claim of a Lender shall be a Class 3 General Unsecured Claim. Allowed Class 1 Claims shall not, for any purpose under the Plan, include interest on such Class 1 Claim on or after the Petition Date.

3.  **Class 2 – Priority Claims**

    (a)  <u>Classification</u>: Class 2 consists of Priority Claims.

    (b)  <u>Treatment</u>: Class 2 is impaired. Each holder of an allowed Claim in Class 2 shall receive a beneficial interest in the Liquidation Trust as set forth in Section 5.10 of the Plan, entitling such holder to receive on account of such Claims, on or as soon as reasonably practicable after the initial Distribution Date and on each periodic Distribution Date thereafter, their Ratable Share of any Cash distribution from the Distribution Fund. Each holder of an allowed Class 2 Claim shall receive such distributions in accordance with the provisions set forth in Section 6.10 of the Plan. The Debtor estimates that there will be no distribution to the holders of allowed Claims in Class 2 and that, as a result, their receipt of a beneficial interest in the Liquidation Trust is unlikely to have any actual value. Holders of Claims in Class 2 shall therefore be deemed to have rejected the Plan and shall not have the opportunity to vote. Allowed Class 2 Claims shall not, for any purpose under the Plan, include interest on such Class 2 Claim on or after the Petition Date.

4.  **Class 3 - General Unsecured Claims**

    (c)  <u>Classification</u>: Class 3 consists of General Unsecured Claims.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/704367.5

(d) <u>Treatment</u>: Class 3 is impaired, and each holder of an allowed Claim in Class 3 shall receive a beneficial interest in the Liquidation Trust as set forth in Section 5.10 of the Plan, entitling such holder to receive on account of such Claims, on or as soon as reasonably practicable after the initial Distribution Date and on each periodic Distribution Date thereafter, their Ratable Share of any Cash distribution from the Distribution Fund. Each holder of an allowed Class 3 Claim shall receive such distributions in accordance with the provisions set forth in Section 6.10 of the Plan. The Debtor estimates that there will be no distribution to the holders of allowed Claims in Class 3 and that, as a result, their receipt of a beneficial interest in the Liquidation Trust is unlikely to have any actual value. Holders of Claims in Class 3 shall therefore be deemed to have rejected the Plan and shall not have the opportunity to vote. Allowed Class 3 Claims shall not, for any purpose under the Plan, include interest on such Class 3 Claim on or after the Petition Date.

**5.** **Class 4 - Interests**

(e) <u>Classification</u>: Class 4 consists of holders of Interests in the Debtor.

(f) <u>Treatment</u>: Class 4 is impaired and the holders of Interests in Class 4 will not receive any distributions on account of Interests. Holders of Interests in Class 4 shall be deemed to have rejected the Plan and shall not have the opportunity to vote.

On the Effective Date, all shares of stock in ATI will be cancelled and will forever cease trading on the NASDAQ OTC Bulletin Board ("<u>OTCBB</u>") or any other securities exchange or market. On or prior to the Effective Date, the Debtor will file a Form 15 with the SEC suspending the registration of ATI common stock under the Securities Exchange Act of 1934, as amended, and the obligation to file periodic SEC reports.

## VI. ACCEPTANCE OR REJECTION OF THE PLAN

### A. <u>Class Acceptance Requirement</u>

An Impaired Class of Claims will have accepted the Plan if the holders (other than any holder designated under Bankruptcy Code section 1126(e)) of at least two thirds in amount of the allowed Claims actually voting in such Class have voted to accept the Plan and the holders (other than any holder designated under Bankruptcy Code section 1126( e)) of more than half in number of the allowed Claims actually voting in such Class have voted to accept the Plan.

31

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200
SDODMS1/704367.5

Class 1 is impaired under the Plan, and has the right to vote on the Plan. Classes 2, 3, and 4 are impaired under the Plan, but because the holders of Claims and Interests in Classes 2, 3, and 4 will not receive or retain any property of value under the Plan, they are deemed to have rejected the Plan and therefore are not entitled to vote on the Plan.

**B.    Cram Down**

The Debtor is requesting confirmation of the Plan under Bankruptcy Code section 1129(b), and reserves the right to modify the Plan to the extent, if any, that confirmation in accordance with Bankruptcy Code section 1129(b) requires modification. Under Bankruptcy Code section 1129(b), the Court may confirm a plan over the objection of a rejecting class, if among other things, (i) at least one impaired Class of Claims has accepted the plan (not counting votes of any "insiders" as defined by the Bankruptcy Code), and (ii) the plan "does not discriminate unfairly" against and is "fair and equitable" to each rejecting class. The Debtor is seeking confirmation pursuant to Bankruptcy Code section 1129(b) as to Classes 2, 3 and 4, each of which are deemed to reject the Plan.

## VII.    IMPLEMENTATION OF THE PLAN

**A.    Dissolution of ATI Corporate Entity**

Within the respective times determined by the Liquidation Trustee as necessary or appropriate under the circumstances (including with respect to the pursuit of causes of action in the name of the Estate), the Debtor shall be dissolved without any further action by the Debtor. The Liquidation Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolution of the Debtor under California state law, where the Debtor is incorporated.

**B.    Dissolution of Malaysian Entity**

The Debtor is the owner of 100 percent of the shares of its wholly-owned subsidiary, Asyst Technologies Malaysia, Sdn. Bhd. ("Malaysia Sub"). The Debtor in the process of liquidating the Malaysia Sub under local law, a lengthy process that is not anticipated to provide any recovery for the Debtor's creditors.

**C.    Liquidation Trust**

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

**1.      Creation of Liquidation Trust.**

As of the Effective Date, the Liquidation Trust shall be created and established for the benefit of all creditors of the Estate holding allowed Claims, into which Trust all assets of the Debtor (excepting the Cash distributions to be made from the Net Proceeds on the Distribution Date to the holders of allowed Lender Secured Claims) shall be transferred and become vested pursuant to and in accordance with the terms hereunder. The Debtor believes that a Liquidation Trust provides the most effective and efficient manner of administering the remaining assets of the Estate, including, without limitation, facilitating any pursuit of Litigation Causes of Action that may be property of the Debtor and/or property of the Estate and negotiating with the trustee in the Japan Proceedings. The Liquidation Trust shall operate under the provisions of an agreement between the Debtor and the Liquidation Trustee establishing the Liquidation Trust, a copy of which in substantially final form shall be filed with the Court no later than ten (10) business days before the Confirmation Hearing.

After the Effective Date, the Debtor shall have no liability to holders of Claims or Interests other than as provided for in the Plan. The Plan will be administered and actions will be taken in the name of the Debtor or Liquidation Trust, as appropriate, through the Liquidation Trustee, irrespective of whether the Debtor has been dissolved.

**2.      Transfer to the Liquidation Trust.**

On the Effective Date, subject to Section 5.33 of the Plan, the Debtor and Estate shall be deemed to have transferred and/or assigned as of the Effective Date any and all assets of the Debtor and the Estate (excepting the Cash distributions to be made from the Net Proceeds on the Distribution Date to the holders of allowed Lender Secured Claims) including, without limitation, (i) Cash and accounts, including, without limitation, any and all moneys held in escrow or separate segregated accounts during the pendency of the Chapter 11 Case, (ii) Litigation Causes of Action, (iii) the Debtor's ownership interest in the Malaysia Sub, and any and all rights, powers and duties associated therewith; (iv) all other property interests, rights, claims, defenses and causes of action with respect to any and all Non-Debtor Intercompany Claims; and (v) any and all other property interests, rights, claims, defenses and causes of action of the Debtor or the Estate, to the Liquidation Trust, and all such transferred assets shall be held by the Liquidation Trust subject to the Lenders'

33

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200
SDODMS1/704367.5

Liens but otherwise free and clear of all Claims, Liens and contractually imposed restrictions, except for the rights to Distribution afforded to holders of allowed Claims under the Plan.

### 3. Creation of Reserve Within Liquidation Trust.

As of the Effective Date, and upon receipt of the assets transferred pursuant to Section 5.3.2 of the Plan, the Liquidation Trustee shall establish and use the transferred assets to fund the Wind-down Reserve in accordance with the terms of the Plan.

## D. Powers

### 1. Directors, Officers and Employees.

On the Effective Date, the authority, power and incumbency of the persons then acting as directors of the Debtor shall be terminated and such directors shall be deemed to have resigned. The employment by the Debtor of each officer and all employees in the employment of the Debtor as of the Effective Date shall automatically on the Effective Date cease to be officers and employees of the Debtor. To the extent the Liquidation Trust hires any prior employees of the Debtor, neither the Liquidation Trustee nor the Liquidation Trust shall be deemed a successor to the Debtor.

### 2. Succession by Liquidation Trustee.

Upon the Effective Date of the Plan, the Liquidation Trustee succeeds to such powers as would have been applicable to the Debtor's officers, directors and shareholders, and the Debtor is deemed dissolved. The Court may issue one or more Orders noting the Effective Date as evidence of the Debtor's dissolution and the termination of all of the Debtor's employees.

## E. Liquidation Trustee

The Debtor has designated Dan Scouler of Scouler & Company as the Liquidation Trustee. The salient terms of the Liquidation Trustee's employment, including the Liquidation Trustee's duties and compensation (which compensation shall be negotiated by the Liquidation Trustee and the Debtor), to the extent not set forth in the Plan, shall be set forth in the Liquidation Trust Agreement. In general, the Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidation Trustee shall have fiduciary duties to beneficiaries of the Liquidation Trust. The Liquidation Trust

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92176
+1 858 523 6200

Agreement shall specify the terms and conditions of the Liquidation Trustee's compensation, responsibilities and powers. The duties and powers of the Liquidation Trustee, shall generally include, without limitation, the following:

1.      To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any officer, director or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders; including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtor, and the dissolution of the Debtor;

2.      To maintain escrows and other accounts, make Distributions and take other actions consistent with the Plan and the implementation of thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Debtor or the Liquidation Trustee, even in the event of the dissolution of the Debtor;

3.      Subject to the applicable provisions of the Plan, to collect and liquidate all assets of the Estate pursuant to the Plan and to administer the winding-up of the affairs of the Debtor;

4.      To object to any Claims (disputed or otherwise), including, without limitation, as discussed in Section 6.1 of the Plan, and to defend, compromise and/or settle any Claims prior to objection without the necessity of approval of the Court, and/or to seek Court approval for any Claims settlements, to the extent thought appropriate by the Litigation Trustee or to the extent such approval is required by prior order of the Court;

5.      To make decisions, without further Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidation Trust and to pay, from the Wind-down Reserve, the charges incurred by the Liquidation Trust on or after the Effective Date for services of professionals, disbursements, expenses or related support services relating to the winding down of the Debtor and implementation of the Plan, without application to the Court;

6.      To cause, on behalf of the Liquidation Trust, the Debtor and the Estate, all necessary tax returns and all other appropriate or necessary documents related to municipal, State, Federal or other tax law to be prepared or filed timely;

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 13:40:31    Page 35 of 62
SDODMS1/704367.5    DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

7.      To make all Distributions to holders of allowed Claims provided for or contemplated by the Plan;

8.      To collect any accounts receivable or other claims and assets of the Debtor or the Estate not otherwise disposed of pursuant to the Plan, including all Non-Debtor Intercompany Claims;

9.      To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the Debtor or the Liquidation Trustee thereunder;

10.     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization, any assets that the Liquidation Trustee concludes are of no benefit to creditors of the Estate or, at the conclusion of the Chapter 11 Case, are determined to be too impractical to distribute;

11.     To investigate, prosecute and/or settle Litigation Causes of Action, participate in or initiate any proceeding before the Court or any other court of appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding, litigate or settle such Litigation Causes of Action on behalf of the Liquidation Trust and pursue to settlement or judgment such actions;

12.     To utilize trust assets to purchase or create and carryall appropriate insurance policies and pay all insurance premiums and costs it deems necessary or advisable to insure the acts and omissions of the Liquidation Trustee;

13.     To implement and/or enforce all provisions of the Plan;

14.     To maintain appropriate books and records (including financial books and records);

15.     To collect and liquidate all assets of the Estate pursuant to the Plan and administer the winding-up of the affairs of the Debtor including, but not limited to, closing the Chapter 11 Case;

16.     To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Court and serve on the United States Trustee monthly financial reports until such time as such reports are no longer required, a final decree is entered closing this Case or the Case is converted or dismissed, or the Court orders otherwise;

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200
SDODMS1/704367.5

17.     To provide the Court, within 20 days after the end of each quarter, with a monthly report setting forth (i) the receipt and disposition by the Liquidation Trustee of property of the Estate or the Debtor during the prior month, including the disposition of funds in the Liquidation Trust, the Wind-down Reserve and Distribution Fund; (ii) all disputed Claims resolved by the Liquidation Trustee during such period and all remaining disputed Claims; (iii) all known material non-Cash assets of the Debtor remaining to be disposed of; (iv) the status of Litigation Causes of Action and other causes of action; (v) an itemization of all expenses the Liquidation Trustee anticipates will become due and payable within the subsequent three months; and (vi) the Liquidation Trustee's forecast of cash receipts and expenses for the subsequent three months;

18.     To do all other acts or things consistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable with respect to implementing the Plan; and

19.     To carry out all member duties and obligations in connection with the Malaysia Sub until the Liquidation Trust's interest in the Malaysia Sub has been liquidated.

**F.      Investments**

All Cash held by the Liquidation Trustee shall be invested as deemed appropriate by the Liquidation Trustee, and need not be invested in accordance with section 345 of the Bankruptcy Code.

**G.      Steering Committee**

A Steering Committee, which shall have general oversight over the Liquidation Trustee, shall be created within ten (10) days of the Effective Date.  The Steering Committee shall consist of three members: (i) two representatives selected by KeyBank, and (ii) a representative selected by the Committee.  Each of the members of the Steering Committee shall have one vote in connection with any matters that are subject to the determination of the Steering Committee.

**H.      Resignation, Death or Removal of Liquidation Trustee**

The Liquidation Trustee may resign at any time upon 30 days' written notice, in accordance with Section 11.13 of the Plan, to the Steering Committee and the Office of the U.S. Trustee provided that a successor Liquidation Trustee is appointed by the majority vote of the Steering

37

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92170
+1 858 523 6200
SDODMS1/704367.5

Committee within the 30-day period.  The Steering Committee in the exercise of its sole discretion, may remove or replace the Liquidation Trustee upon notice to parties in interest pursuant to Section 11.13 of the Plan and in accordance with the Liquidation Trust Agreement.  No successor Liquidation Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Every successor Liquidation Trustee shall execute, acknowledge and file with the Court an instrument in writing accepting such appointment hereunder, and thereupon such successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.

## I.     Tax Treatment of Liquidation Trust

The Debtor intends that the Liquidation Trust will be treated as a "liquidating trust" within the meaning of section 301.770 1-4(d) of the Treasury Regulations. The transfer of the Debtor's and the Estate's remaining assets to the Liquidation Trust shall be treated as a transfer to the beneficiaries of the Liquidation Trust for all purposes of the Internal Revenue Code (*e.g.,* sections 61(a)(12), 483, 1001, 1012 and 1274) followed by a deemed transfer by such beneficiaries to the Liquidation Trust. The Liquidation Trust shall be considered a "grantor" trust, and the beneficiaries of the Liquidation Trust shall be treated as the grantors and deemed owners of the Liquidation Trust. To the extent valuation of the transferred property to the Liquidation Trust is required under applicable law, the Liquidation Trustee shall value the transferred property and notify in writing the beneficiaries of the Liquidation Trust of such valuations. The assets transferred to the Liquidation Trust shall be valued consistently by the Liquidation Trustee and the Trust beneficiaries, and these valuations will be used for all federal income tax purposes.

/ / /

/ / /

/ / /

## J.     Liquidation Trust Interests

The beneficial interests in the Liquidation Trust shall not be represented by certificates and shall be transferable subject, as applicable, to Bankruptcy Rule 3001(e) and any other provision of law.

38

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200
SDODMS1/704367.5

Case: 09-43246     Doc# 519     Filed: 12/28/09     Entered: 12/28/09 19:40.31     Page 38 of 62

## K. Funding of the Plan

### 1. Source of Distributions.

The Cash Distributions to be made pursuant to the Plan and the funding of the Wind-down Reserve will be derived from (i) Net Proceeds received by the Debtor from the liquidation of its assets as of the Effective Date and other funds then available, and (ii) any payments to be received by the Debtor from the further liquidation of assets and the prosecution and enforcement of causes of action of the Debtor, and other funds available after the Effective Date.

### 2. Reserves.

To the extent not otherwise provided for herein or ordered by the Court, the Liquidation Trustee shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the Estate and the Liquidation Trust after the Effective Date. Without limitation, these reserves shall include funds for the Wind-down Reserve, Fee Claims, and Administrative Claims.

### 3. No Physical Segregation of Funds.

Notwithstanding any contrary provision contained herein, the Liquidation Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidation Trustee to determine Available Cash, reserves and amounts to be paid to parties in interest.

## L. Wind-down Reserve

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidation Trustee shall create the Wind-down Reserve and shall transfer an appropriate amount into such reserve from the assets transferred by the Debtor to the Liquidation Trust. The Liquidation Trustee shall pay Plan administration costs and costs of holding and liquidating any non-Cash property, including but not limited to taxes and professional fees, from the Wind-down Reserve. To the extent that the Liquidation Trustee determines that funds allocated to the Wind-down Reserve are insufficient for such purposes, the Net Proceeds of the continuing liquidation of the Debtor's assets and any other Available Cash shall, to the extent necessary for such purposes, be allocated to the

39

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

Wind-down Reserve. After all costs associated with the Wind-down Reserve have been paid, and/or upon the reasonable determination of the Liquidation Trustee that the funds in the Wind-down Reserve exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Wind-down Reserve shall be paid to the Lenders on account of the allowed Lender Secured Claim.

**M.** **Distribution Fund**

    **1.** **Funding of Distribution Fund.**

After all payments have been made or properly reserved for holders of unpaid Administrative Claims, Fee Claims, and Lender Secured Claims, and/or upon the reasonable determination of the Liquidation Trustee that the funds in the Wind-down reserve exceed the amount necessary for such reserves, the remaining Available Cash, if any, shall be allocated to the Distribution Fund..

    **2.** **Allocation of Available Cash.**

Distribution of Cash proceeds (i) of recoveries, if any on the Lenders' collateral that are received subsequent to the initial Distribution Date, to holders of Class 1 allowed Lender Secured Claims, and (ii) from the liquidation of property, if any, that is not the Lenders' collateral, to holders of Class 2 Priority Claims and Class 3 General Unsecured Claims pursuant to the provisions of the Plan, in each case shall be made solely from the Distribution Fund.

**N.** **Exemption from Certain Transfer Taxes**

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer pursuant to the confirmed Plan shall not be subject to any law imposing a stamp tax or similar tax, to the fullest extent provided for under section 1146(a) of the Bankruptcy Code.

**O.** **Employee Programs**

To the extent not earlier terminated in accordance with their terms, all employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans are deemed terminated in accordance with their terms with no further action required by the Debtor or the Liquidation Trustee, and to the extent any of such employee programs constitute distinct executory contracts with individual employees or otherwise, such contracts are rejected as of the Petition Date in accordance with Section 7.1 of the Plan. The Liquidation Trustee is authorized to

40

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92126
+1 858 523 6200
SDODMS1/704367.5

take any actions to permit the termination of such programs and discharge all benefit liabilities to participants and beneficiaries of such programs, including, without limitation, continuation of the termination of the Debtor's 401(k) plan.

**P.    Non-Cash Property**

All non-Cash assets or property of the Estates (other than collateral returned to the holder of a Secured Claim) not previously disposed of may be transferred, sold or otherwise liquidated or, if appropriate in the judgment of the Liquidation Trustee, abandoned in any commercially reasonable manner, including to a charitable organization or organizations in respect of assets of inconsequential value, without further order of the Court.  Notice of such sale, transfer or abandonment shall be provided to the U.S. Trustee and to the holders of Lender Secured Claims holding liens on such assets or property.  Subject to the provisions hereof with regard to Distributions to the holders of Lender Secured Claims, in the case of collateral, the Net Proceeds of such sales shall be deposited in the Liquidation Trust. Except in the case of gross negligence or willful misconduct, no party in interest shall have a cause of action against the Debtor, its directors, officers, employees, consultants or professionals, the Liquidation Trustee, the Liquidation Trust, its employees, consultants or professionals, or the Committee, its former and current members, consultants or professionals, arising from or related to: (a) the disposition of non-Cash assets or property in accordance with Section 5.16 of the Plan; or (b) the investment of amounts by the Liquidation Trustee.

Notwithstanding anything to the contrary in the Plan, to the extent any sale of non-Cash assets or property requires the Liquidation Trustee to escrow or otherwise retain any consideration received in the sale (for example, pending post-closing adjustments), such escrowed or retained funds will not be deposited in the Wind-down Reserve or Distribution Fund or distributed to holders of Claims as set forth in the Plan until the Liquidation Trustee or the Debtor are contractually allowed to distribute such funds, or the Court otherwise authorizes such Distribution.

**Q.    Withdrawal of the Plan**

The Debtor, in consultation with the Lenders, reserves the right to revoke and withdraw or to modify the Plan in accordance with Section 11.1.1 of the Plan at any time up to the Effective Date. If

41

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO 09-43246

DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION
SDODMS1/704367.5

the Debtor revokes or withdraws the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or its Estate or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor, and (b) the result shall be the same as if the Confirmation Order were not entered, and Plan was not filed and the Effective Date did not occur.

**R.**     **Cram Down**

With respect to Classes 2, 3 and 4, the Debtor is seeking confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**S.**     **Preservation of Insurance Policies**

Nothing in the Plan, including any releases, diminishes or impairs the enforceability of any insurance policies that may cover any claim against the Debtor or any other Person.

**T.**     **Retention of Actions and Defenses**

1.      All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity or otherwise, whether arising under the Bankruptcy Code or federal, state or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code (including, without limitation, the Litigation Causes of Action and the Non-Debtor Intercompany Claims), as well as all claims, rights, defenses, offsets, recoupments and causes of action arising under chapter 5 of the Bankruptcy Code with respect to the Debtor or the Estate, shall be and hereby are preserved for the benefit of the beneficiaries of the Liquidation Trust, and shall be and hereby are deemed to be part of the assets transferred and assigned to the Liquidation Trust as of the Effective Date in accordance with section 1123(b) of the Bankruptcy Code.  Prosecution and settlement of such claims, rights, defenses, and causes of action shall be the responsibility of the Liquidation Trustee, pursuant to the provisions of the Liquidation Trust Agreement, and the Liquidation Trustee shall pursue those claims, rights, defenses and causes of action, as appropriate, in accordance with the Liquidating Trustee's sole judgment of what is in the best interests, and for the benefit of, the beneficiaries of the Liquidation Trust; provided, however, that nothing in the Plan is intended to or does confer upon the Liquidation Trustee standing to pursue claims or causes of action that do not constitute property of the Estate, except as may otherwise be provided in the Confirmation Order.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200
SDODMS1/704367.5

2.      Nothing in the Plan or the Confirmation Order shall limit, impair or otherwise restrict the rights of the Liquidation Trustee to bring any claim or cause of action against any Person (not otherwise released pursuant to the Plan) for any reason whatsoever, including, without limitation, the failure of the Plan to identify and/or describe such potential claim(s) or causes of action(s) with specificity. In addition to the general reservation of rights, the Liquidation Trustee reserves the right to modify the Plan at any time prior to substantial consummation of the Plan to include such specificity, if necessary, or otherwise desirable, without the necessity of complying with section 1127(b) of the Bankruptcy Code.

3.      Litigation Causes of Action may be prosecuted, settled or abandoned with or without Court approval by the Liquidation Trustee after the Effective Date. Notwithstanding anything to the contrary herein, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by such claimant, if the Debtor or the Liquidation Trustee has taken action to recover, or given notice to the applicable party of intent to take such action, on a Litigation Cause of Action against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Litigation Cause of Action is resolved by Final Order or otherwise in accordance with Section 5.19 of the Plan. The Liquidation Trustee will be substituted as the party in interest instead of the Debtor or Committee for all Litigation Causes of Action, if any, pending on the Effective Date.

**U.      Retention of Jurisdiction**

Under the Plan, notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date of the Plan, the Court shall retain jurisdiction, to the fullest extent legally permitted, over the Bankruptcy Case, all proceedings arising under, arising in or related to the Bankruptcy Case, the Confirmation Order, and Plan and administration of the Liquidation Trust. The specific types of disputes and proceedings that the Court shall retain jurisdiction over are identified in Article 10 of the Plan.

**VIII.   DISTRIBUTIONS**

**A.      Objections to and Estimation of Claims**

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

From and after the Effective Date, the Liquidation Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims. From and after the Effective Date, the Liquidation Trustee may settle or compromise any disputed Claim without approval of the Court. The Liquidation Trustee also reserves the right to resolve any disputed Claim outside the Court under applicable governing law.

In addition, the Liquidation Trustee may, at any time request that the Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Claim that is contingent or unliquidated, regardless of whether the Debtor has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated Claim, the amount of such estimation will constitute either the allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Administrative and Priority Claims may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date including pursuant to orders of the Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that payments were made.

**B.** **No Recourse to Liquidation Trustee**

Notwithstanding that the allowed Amount of any particular disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other holders of allowed Claims in the relevant Class, no Claim holder shall

44

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

have recourse to the Debtor, the Liquidation Trust, the Liquidation Trustee, or any of their respective professionals, or their successors or assigns, or the holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(o) of the Bankruptcy Code. **THUS, THE COURT'S ENTRY OF AN ESTIMATION ORDER UNDER SECTION 502(c) OF THE BANKRUPTCY CODE MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

**C.**     **Transmittal of Distributions and Notices**

Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by that Person or his authorized agent. Absent any of the foregoing, the address set forth in the relevant Schedule of Assets and Liabilities for that Person may be used. Property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

**D.**     **Unclaimed Property**

If any Distribution remains unclaimed for a period of 90 days after the relevant Distribution Date to the holder of an allowed Claim entitled thereto, the Distribution shall constitute Unclaimed Property and the holder shall no longer be entitled to that Distribution or any later Distributions. All right, title and interest in and to Unclaimed Property shall immediately vest in the Liquidation Trust, and such property shall be retained by the Liquidation Trust for distribution pursuant to the terms of the Plan, subject, however, to the Liquidation Trustee's sole discretion to distribute Unclaimed Property to holders entitled thereto if such holders are subsequently located.

**E.**     **Withholding Taxes and Expenses of Distribution**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the

45

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200
SDODMS1/704367.5

Liquidation Trustee shall be authorized to withhold Distribution on such Claims until the requisite information is received. If such information is not received within 180 days after the relevant Distribution Date, the Unclaimed Property provisions of Section 6.5 of the Plan shall apply. In such event, such creditor will not be entitled to receive such Distribution. All Distributions under the Plan shall be net of the actual and reasonable costs of making such Distributions and of any allocable fees or other charges relating thereto.

**F.      Disputed Payment**

If any dispute arises as to the identity of a holder of an allowed Claim who is to receive any Distribution, the Liquidation Trustee may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

**G.      Distribution Record Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor, or its agents, shall be closed, and the Debtor or its agents shall not be required to make any further changes in the record holders of any of the Claims or Interests. The Debtor or Liquidation Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Liquidation Trustee and Debtor shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**H.      Setoffs**

Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, the Debtor or the Liquidation Trustee may, pursuant to applicable law, set off against any Claim (for purposes of determining the allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor, the Estate or the Liquidation Trust may hold against the holder of such Claim. Any and all rights of setoff of the Debtor shall be transferred and assigned to the Liquidation Trust and be

46

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92128
+1 858 523 6200

enforceable by the Liquidation Trustee in the same manner and to the same extent that the Debtor could have exercised such rights of setoff.

Neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor or the Liquidation Trust, nor any provision of the Plan shall constitute a waiver or release by the Debtor or the Liquidation Trust of any such claims, rights and causes of action that the Debtor or the Liquidation Trustee may possess against such holder. To the extent the Debtor or the Liquidation Trustee fails to setoff against a creditor and seek to collect a claim from such creditor after a Distribution to such creditor pursuant to the Plan, the Debtor or the Liquidation Trustee, if successful in asserting such claim, shall be entitled to full recovery against such creditor. The Liquidation Trustee may seek periodic Court approval for any such setoff or setoffs.

**I.     Miscellaneous Distribution Provisions**

    **1.     Method of Cash Distributions.**

Any Cash payment to be made by the Liquidation Trustee pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Liquidation Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

    **2.     Distributions on Non-Business Days.**

Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

    **3.     No Distribution in Excess of Allowed Amount of Claim.**

Notwithstanding anything to the contrary herein, no holder of an allowed Claim shall receive in respect of such Claim any Distribution in excess of the allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim shall be allowed nor Distribution made to the extent that it is for postpetition interest.

    **4.     Minimum Distributions.**

If a Distribution to be made to a given holder of an allowed Claim on or after the Effective Date or any subsequent Distribution Date would be $25.00 or less in the aggregate, notwithstanding any contrary provision of the Plan, no such distribution will be made to such holder unless (except

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

with respect to the final Distribution Date) a request therefor is made in writing to the Liquidation Trustee no later than thirty (30) days after the Distribution Date. Any unclaimed Distributions shall be retained by the Liquidation Trust for distribution pursuant to the terms of the Plan.

## IX.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption or Rejection of Executory Contracts and Unexpired Leases

On the Confirmation Date, all prepetition executory contracts and unexpired leases of the Estate that have not been assumed before such date shall be rejected by the Debtor under sections 365 and 1123 of the Bankruptcy Code, except any executory contract or unexpired lease that is the subject of a separate motion to assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order. Notwithstanding anything in the Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of Article 7 of the Plan if the Effective Date fails to occur for any reason.

## X.     EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### A.     Surrender of Securities and Cancellation of Existing Securities and/or Related Agreements

#### 1.     Surrender of Securities.

Each holder of any Claim against or Interest in the Debtor shall, to the extent not already in the Debtor's possession, surrender to the Liquidation Trustee any original note, instrument, certificate, certificated security or other item evidencing such Claim, and provide copies of any supporting agreement or other document. No Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until such holder surrenders such items to the Liquidation Trustee, or demonstrates the non-availability of such items to the satisfaction of the Liquidation Trustee, including requiring such holder to post a lost instrument or other indemnity bond, among other things, to hold the Debtor and the Liquidation Trustee harmless in respect of such instrument or other item described above and any Distributions made in respect thereof. Any such holder that fails to surrender such items described above or satisfactorily explain their non-availability to the Liquidation Trustee within 180 days of the initial Distribution Date, or such later date as the

48

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

Liquidation Trustee may designate, shall be deemed to have no further Claim against the Debtor, the Liquidation Trust or their property in respect of such Claim and shall not participate in any Distribution under the Plan, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property. Notwithstanding the immediately preceding sentence, any such holder of a disputed Claim shall not be required to surrender such items until the time such Claim is allowed or disallowed.

### 2. Cancellation of Existing Securities and/or Related Agreements.

Except for purposes of evidencing a right to Distributions under the Plan or otherwise provided in the Plan, on the Effective Date, all agreements and other documents evidencing (i) any Claims or rights of any holder of a Claim against or Interest in the applicable Debtor, and (ii) any options or warrants to purchase Interests, obligating the applicable Debtor to issue, transfer or sell Interests or any other capital stock of the applicable Debtor, shall be canceled and terminated and of no further force or effect.

On the Effective Date, all shares of stock in ATI will be cancelled and will forever cease trading on the NASDAQ OTC Bulletin Board ("OTCBB") or any other securities exchange or market.  On or prior to the Effective Date, the Debtor intends to immediately file a Form 15 with the SEC suspending the registration of ATI common stock under the Securities Exchange Act of 1934, as amended, and the obligation to file periodic SEC reports.

/ / /

### B. Releases, Exculpation, and Indemnification

#### 1. Satisfaction of Claims and Interests in any Debtor.

The treatment to be provided for respective allowed Claims against or Interests in the Debtor pursuant to the Plan and the obligations of the Liquidation Trust to holders of Claims and Interests shall be in full satisfaction, settlement and release of such respective Claims and Interests. Except as otherwise expressly provided for herein, any claims of the Debtor or the Estate against holders of any allowed Claims or Interests shall not be compromised.

#### 2. Release and Waiver of Claims.

49

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

Case: 09-43246   Doc# 519   Filed: 12/28/09   Entered: 12/28/09 19:40:31   Page 49 of 62

Under the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby acknowledged, the Debtor, on behalf of itself and the Estate, (*and by and on behalf of no other person*), shall be, and is deemed to waive, release and discharge each Released Party of and from any and all Claims, obligations, demands, actions, suits, judgments, damages, causes of action, liabilities, costs, expenses and damages of any kind whatsoever, whether known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, in each case arising out of or otherwise relating to any matter, fact, transaction, act or inaction which first arose prior to the Effective Date, solely to the extent permissible pursuant to 11 U.S.C. § 524(e), and excepting any Claim against any Released Party who is a current or former officer and/or director of the Debtor (a) for which coverage exists under the D&O Policy (up to the extent of that coverage or the extent of any extra-contractual liability of the carriers to such Released Parties); or (b) brought about or contributed to in fact by any (i) intentional, dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law as determined by a final adjudication in the underlying proceeding or in a separate action or proceeding; or (ii) profit or remuneration gained by such Released Party to which such Released Party is not legally entitled as determined by a final adjudication in the underlying proceeding or in a separate action or proceeding (each, a "Released Claim").  Nothing in Section 8.22 of the Plan, or otherwise, is intended to, or shall in any way, limit the right of any Released Party who is a current or former director of officer of the Debtor to seek advancement by the carriers of the D&O Policy of the fees, costs, and expenses of defending against any Claim that is not a Released Claim.

### 3.    Release of Liens and Perfection of Liens.

Except as otherwise specifically provided in the Plan or in any agreement, instrument or document created in connection with the Plan: (i) each holder of a judgment, personal property or ad valorem tax, mechanics' or similar lien Claim, in each case regardless of whether such Claim is an allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (y) turn over and release to the Estate or the Liquidation Trustee, as the case may be, any and all property of the Debtor or the Estate that secures or purportedly secures such Claim, or such lien and/or Claim shall automatically, and

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 50 of 62

without further action by the Debtor, the Estate or Liquidation Trustee, be deemed released; and (z) execute such documents and instruments as the Liquidation Trustee requires to evidence such Claim holder's release of such property or lien, and if such holder refuses to execute appropriate documents or instruments the Liquidation Trustee may, in his/her discretion, file a copy of the Confirmation Order which shall serve to release any Claim holder's rights in such property; and (ii) on the Effective Date, all right, title and interest in such property shall revert to the Debtor or the Estate or be transferred to the Liquidation Trust, free and clear of all Claims and Interests, including, without limitation, liens, escrows, charges, pledges, encumbrances and/or security interests of any kind.

Without limiting the automatic release provisions of the immediately preceding paragraph: (i) no Distribution under the Plan shall be made to or on behalf of any Claim holder unless and until such holder executes and delivers to the Debtor, the Estate or the Liquidation Trust (as applicable) such release of liens or otherwise turns over and releases such Cash, pledge or other possessory liens; and (ii) any such holder that fails to execute and deliver such release of liens within 180 days of the Effective Date shall be deemed to have no Claim against the Debtor or the Estate or its assets or property in respect of such Claim and shall not participate in any distribution hereunder.

**4.      Indemnification.**

As of the Plan Effective Date, and notwithstanding anything to the contrary herein or in the Plan, or otherwise, no Person shall have any right to seek advancement or indemnification from the Debtor, the Estate, or the Liquidation Trustee for any amounts relating to the non-released Claims. The Debtor shall not be permitted or required to pay any amounts to any Person as advancement or indemnification relating to the non-Released Claims. Such advancement or indemnification shall be sought solely from the carriers of the D&O Policy. Unless otherwise ordered by the Court (which order may be entered at any time), no entity shall be required to reserve for any such obligations and such obligations shall be terminated and discharged upon the closing of this Case. Moreover, nothing contained herein shall elevate the priority of any indemnification claim from a General Unsecured Claim to an Administrative Claim.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200
SDODMS1/704367.5

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 51 of 62

**5.        Exculpation and Limitation of Liability.**

Under the Plan, to the fullest extent necessary to protect the debtor and the administration of the Estate pursuant to *In re American Hardwoods*, 885 F.2d 621, 625  (9th Cir 1989), as of the Plan Effective Date, neither the Debtor, the Committee, nor such persons serving as either of the Debtor's or the Committee's retained professionals in this case shall incur any liability for, and are thereby expressly exculpated and released from, any Claims (including without limitation, any Claims whether known or unknown, foreseen or unforeseen, then existing or thereafter existing in law, equity, or otherwise), *solely to the extent such Claims relate to* any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of the following (i) the commencement and administration of this Chapter 11 Case; (ii) the operation of the Debtor during the pendency of the Chapter 11 Case; (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof; (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; or (v) any Distributions made pursuant to the Plan, excepting that such exculpation and release shall not apply to actions or omissions to act to the extent determined by a court of competent jurisdiction (in a Final Order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities in connection with the foregoing.  It being expressly understood that any act or omission with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation.

**6.        Direct Claims.**

Notwithstanding anything herein or in the Plan or otherwise to the contrary, the Plan shall in no manner act or be construed to waive, release or enjoin any direct, non-derivative claims or actions held by a non-Debtor against any third party including, without limitation, any Released Party, based upon any act or occurrence, or failure to act, taking place prior to the Petition Date.

**XI.        CONDITIONS TO CONFIRMATION AND CONSUMMATION**

52

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92178
+1 858 523 6200

**A.** **Conditions to Consummation**

The Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied. Except as provided in Section 9.2 of the Plan, any one or more of the following conditions may be waived:

    1.    The Lenders have reviewed and approved of the proposed Confirmation Order;

    2.    The Confirmation Order shall have become a Final Order;

    3.    The Wind-down Budget is completed; and

    4.    The Debtor and/or Liquidation Trust have sufficient Cash on hand (or investments projected by the Debtor to provide timely Cash) to make timely Distributions sufficient (including allocating Cash to reserves as provided in the Plan) to make payments in respect of all allowed Administrative Claims, and allowed Fee Claims required as of the initial Distribution Date.

**B.** **Waiver of Conditions to Consummation**

Other than the requirement that the Confirmation Order must have become a Final Order and the Debtor and/or Liquidation Trust must have sufficient Cash on hand, none of which can be waived, the requirement that a particular condition be satisfied may be waived in whole or part by consent of the Debtor, after consulting with KeyBank, without notice or hearing.

**C.** **Effect of Nonoccurrence of the Conditions to Consummation**

If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived thirty (30) days after the Confirmation Date, or such later date as shall be agreed by the Debtor, after consulting with KeyBank, the Confirmation Order may be vacated by the Court. If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or Interests in, the Debtor.

## XII.   CONFIRMATION OF THE PLAN

The Court may confirm the Plan only if it determines that the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code, including, among other things, that (a) the Plan properly classifies Claims and Interests (b) the Plan complies with applicable provisions of the Bankruptcy Code, (c) the Debtor has complied with applicable provisions of the Bankruptcy

53

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

Code, (d) the Debtor has proposed the Plan in good faith and not by any means forbidden by law, (e) disclosure of "adequate information" as required by Bankruptcy Code section 1125 has been made, (f) the Plan has been accepted by the requisite votes of creditors or Interest holders (except to the extent "cramdown" is available under Bankruptcy Code section 1129(b)), (g) the Plan is in the "best interests" of all holders of Claims and Interests in each impaired Class, (h) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Court and the Confirmation Order, have been paid, or the Plan provides for the payment of such fees on the Effective Date, and (i) the Plan provides for the payment of all retiree benefits, as defined in Bankruptcy Code section 1114, at the level established at any time before confirmation in accordance with Bankruptcy Code sections 1114( e)(1 )(B) or 1114(g), for the duration of the period that the Debtor has obligated itself to provide such benefits.

**A.    Voting Requirements**

See Article III - Voting on the Plan.

**B.    Feasibility of the Plan**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Plan proposed by the Debtor provides for a liquidation of the Debtor's remaining assets and a distribution of Cash to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. The ability of the Liquidation Trust to make the distributions described in the Plan does not depend on future earnings of the Debtor. Accordingly, the Debtor believes that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

**C.    Best Interests Test**

In order to confirm the Plan, the Court must independently determine that the Plan is in the best interests of each holder of a Claim or Interest in any such impaired Class who has not voted to accept the Plan. Accordingly, if an impaired Class does not unanimously accept the Plan, the best interests test requires the Court to find that the Plan provides to each member of such impaired Class

54

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200
SDODMS1/704367.5

a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

**D.    Liquidation Analysis**

The Debtor has liquidated substantially all of its assets through asset sales during the Chapter 11 Case and is in the process of liquidating any remaining assets. The Debtor, Lenders and the Committee believe that liquidation under chapter 11 is more beneficial to the Holders of Claims than a liquidation under chapter 7 because the Plan allows the Debtor's remaining assets to be promptly administered and grants the Liquidation Trustee the right to object to Claims. To that end, the Plan provides that all Litigation Causes of Action of the Debtor or its Estate and any other remaining assets will vest in and be transferred to the Liquidation Trust. The Liquidation Trustee will pursue the Litigation Causes of Action on behalf of the Liquidation Trust, and the proceeds therefrom will be distributed in accordance with the Plan. The Plan maximizes the recovery to Holders of Claims.

Additionally, if this case was to be converted to a chapter 7 case, the Debtor's estate would incur the costs of payment of a statutorily allowed commission to the chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtor believes such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtor. Conversion also would likely delay the liquidation process and the ultimate distribution to unsecured creditors. The Debtor's estate would also be obligated to pay all unpaid expenses incurred by the Debtor during thus Chapter 11 Case (such as compensation for professionals) which are allowed in a chapter 7 case. Accordingly, the Debtor, the Lenders and the Committee believe that holders of allowed Claims would receive less than anticipated under the Plan if this Chapter 11 Case was converted to a chapter 7 case.

**Pro Forma Recovery Analysis as of December 11, 2009 ($ in millions)**

| Description | Low | High |
|---|---|---|
| A.  Proceeds Available for Plan | $17.320 | 20.520[*] |
| B.  Administrative Claims and Fee Claims | | |

---

[*] Includes estimated approximate 10 percent recovery on $32 million unsecured claim filed in the Japan Proceedings.

55

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/704367.5

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 55 of 62

| Description | Low | High |
|---|---|---|
| Corporate Payroll and Related Expenses | $0 | $0 |
| Accounts Payable and Accrued Liabilities | $0 | $0 |
| 503(b)(9) Claims | $0 | $0 |
| Debtor's and Committee's Professional Fees** | $0.682 | $0.682 |
| Deposits | $0 | $0 |
| Other*** | $ 0.057 | $ 0.057 |
| **Total Administrative Claims and Fee Claims** | $ 0.739 | $ 0.739 |
| **Proceeds Available for Lender Secured Claims** | $16.581 | $19.781 |
| C.      Lender Secured Claims | $77.000 | $77.000 |
| **Proceeds Available for Priority Claims** | $0 | $0 |
| D.  Priority Tax Claims | $0.926 | $0.926 |
| **Proceeds Available for Priority Non-Tax Claims** | $0 | $0 |
| E.  Priority Non-Tax Claims | | |
| Employee Benefits & Severance | $2.143 | $2.143 |
| Other | $0 | $0 |
| Total Priority Claims | $3.069 | $3.069 |
| **Proceeds Available for General Unsecured Claims** | $0 | $0 |
| F.  General Unsecured Claims **** | $39.243 | $39.243 |
| General Unsecured Claims Recoveries | 0% | 0% |

The estimates included in the Pro Forma Recovery Analysis are good faith estimates as of December 11, 2009 of the amounts of claims that might ultimately be allowed as well as the assets that will be available for distribution. The estimated claims are neither an admission of the allowability or amount of any individual claim or type of claim nor an admission of that the Debtor is obligated to pay any Claim.

E.      **Risks Associated with the Plan**

Both the confirmation and consummation of the Plan are subject to a number of risks. Specifically, if certain standards set forth in the Bankruptcy Code are not met, the Court will not

**Fees of the Debtor's and the Committee's professionals have been paid in the ordinary course pursuant to the Fee Order. The amounts disclosed exclude $0.282 million fees invoiced by the Creditor Committee and their financial advisors that exceed the Budget defined in connection with the Court's order approving the use of the Secured Lenders' cash collateral.
***Includes $24 thousand in post petition property taxes due in connection with real property leases.
****General Unsecured Claims of $39.243 million represent actual filed claims with the debtor's claims agent as of the bar date.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

56

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

confirm the Plan even if holders of Claims and Interests accept the Plan. Although the Debtor believes that the Plan meets such standards, there can be no assurance that the Court will reach the same conclusion. If the Court were to determine that such requirements were not met, it could require the Debtor to solicit acceptances, which could delay and/or jeopardize confirmation of the Plan. The Debtor believes that the Court will confirm the Plan. The Debtor, however, can provide no assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require a solicitation of acceptances.

## F.   **Alternatives to Plan**

The Debtor believes that the Plan affords Holders of Claims against and Interests in the Debtor the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such Holders. If, however, the Plan is not confirmed and consummated, the theoretical alternatives include: (a) formulation of an alternative plan or plans of liquidation, (b) liquidation of the Debtor under chapter 7 of the Bankruptcy Code, or (c) dismissal.

### 1.   **Other Potential Plan(s)**

If the Plan is not confirmed, the Debtor or, any other party-in-interest, could attempt to formulate and propose a different plan or plans. Because the Debtor has no ongoing operations, the alternatives to the Plan are limited and not likely to benefit creditors. Although the Debtor could theoretically file a new plan, the most likely result if the Plan is not confirmed and consummated is that the Chapter 11 Case will be converted to a case under chapter 7 of the Bankruptcy Code. The Debtor, Lenders and the Committee believe that conversion of this Chapter 11 Case to chapter 7 would result in (i) significant delay in distributions to all creditors who would have received a distribution under the Plan and (ii) diminished recoveries for creditors.

With respect to other potential plans, the Debtor has explored various other choices in connection with the negotiation process involved in the formulation and development of the Plan. The Plan, as described herein, is the result of negotiations between the Debtor, the Lenders and the Committee and enables Creditors to realize the greatest possible value under the circumstances, and, that as compared to any other plan, the Plan has the greatest chance to be confirmed and consummated. If the Debtor remains in chapter 11, the Debtor could continue to wind down its

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92178
+1 858 523 6200
SDODMS1/704367.5

businesses and liquidate its remaining properties as debtor in possession, but it would remain subject to the restrictions imposed by the Bankruptcy Code. Ultimately, the Debtor (or other parties in interest) could propose another plan or liquidate under chapter 7.

## 2. Liquidation Under Chapter 7

If no plan is confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the Debtor's assets for distribution to creditors in accordance with the priorities specified by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or Interests in the Debtor.

The Debtor believes that in a liquidation under chapter 7, before creditors receive any distribution, additional administrative expenses involved in the appointment of a trustee or trustees and attorneys, accountants and other professionals to assist such trustees would cause a substantial diminution in the value of the Debtor's Estate. The assets available for distribution to creditors would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation and the failure to realize the greater going concern value of the Debtor's assets.

## 3. Dismissal.

The most remote alternative possibility is dismissal of the Bankruptcy Case. If the Debtor's Bankruptcy Case was dismissed, the Debtor would no longer have the protection of the Court and the applicable provisions of the Bankruptcy Code. The Debtor's secured creditors could immediately commence exercising their rights as secured creditors to foreclose on the property pledged to secure their debts. The Debtor believes that the dismissal of the Bankruptcy Case would result in far smaller Distributions than the Distributions that are provided for in the Plan.

**THE DEBTOR BELIEVES THAT THE PLAN AFFORDS SUBSTANTIALLY GREATER BENEFITS TO CREDITORS AND INTEREST HOLDERS THAN WOULD**

58

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO 09-43246
DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 23, 2009 FOR PLAN OF LIQUIDATION

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 58 of 62

ANY OTHER REASONABLY CONFIRMABLE PLAN UNDER ANY CHAPTER OF THE BANKRUPTCY CODE.

## XIII.   FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.   Introduction

The purpose of this provision is to provide a discussion of the potential material federal income tax consequences of the Plan to the Debtor and the hypothetical holders of Claims or Interests in the case that would enable such a hypothetical investor to make an informed judgment about the Plan, as contemplated in II U.S.C. § 1125(a)(l). The federal income tax consequences discussed herein are those arising under the Internal Revenue Code of 1986, as amended (the "Tax Code") and the income tax regulations promulgated thereunder (the "Regulations"), and case law, revenue rulings, revenue procedure and other authority interpreting the relevant sections of the Tax Code and the Regulations.

This summary does not address foreign, state, or local tax law, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as taxpayers who are not United States domestic corporations or citizens or residents of the United States, S corporations, banks, mutual funds, insurance companies, financial institutions, regulated investment companies, broker-dealers, non-profit entities or foundations, small business investment companies, persons that hold Claims or Interests as part of a straddle or conversion transaction, and tax-exempt organizations.)

No administrative rulings will be sought from the Internal Revenue Service ("IRS") with respect to any of the federal income tax aspects of the Plan. Consequently, there can be no assurance that the treatment described in this Disclosure Statement will be accepted by the IRS. No opinion of counsel has either been sought or obtained with respect to the federal income tax aspects of the Plan.

THE ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT WITH RESPECT TO THE POTENTIAL MATERIAL FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO THE DEBTOR AND THE HYPOTHETICAL HOLDERS OF CLAIMS OR INTERESTS WAS NOT INTENDED OR WRITTEN TO BE USED, AND IT CANNOT BE USED BY ANY

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92176
+1 858 523 6200

TAXPAYER, FOR THE PURPOSE OF AVOIDING ANY TAX PENALTIES THAT MAY BE IMPOSED ON SUCH TAXPAYER.  THE ADVICE CONTAINED HEREIN WAS WRITTEN TO ADDRESS THE TAX MATTERS DESCRIBED ABOVE.  ALL CLAIMANTS AND INTEREST HOLDERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

**B.**     **Material Tax Consequences to the Debtor**

Generally, under the terms of the Plan, all Claims will be released except to the extent that the Debtor has Cash available to satisfy all or a portion of such Claims. Any income resulting from the satisfaction of any Claim at a discount will not constitute taxable income to the Debtor because the debt forgiveness arises in connection with a bankruptcy case under Title 11 of the United States Code.

**C.**     **Material Tax Consequences to Creditors**

**1.**     **In General.**

The federal income tax consequences of the implementation of the Plan to a creditor will depend, among other things, on (a) whether the creditor receives consideration in more than one tax year, (b) whether the creditor is a resident of the United States, (c) whether all of the consideration by the creditor is deemed to be received by that creditor as part of an integrated transaction, (d) whether the creditor reports income using the accrual or cash method of accounting, and ( e) whether the creditor has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

**2.**     **Gain or Loss on Exchange**

Generally, a creditor will realize a gain or loss on the exchange under the Plan of its Claim for Cash in an amount equal to the difference between (i) the Cash received by the creditor (other than any Cash attributable to accrued but unpaid interest on the Claim), and (ii) the creditor's adjusted basis in the Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain or loss recognized will be a capital gain or loss if the Claim was a capital asset in the hand of the creditor, and such gain or loss

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92120
+1 858 523 6200

SDODMS1/704367.5

Case: 09-43246    Doc# 519    Filed: 12/28/09    Entered: 12/28/09 19:40:31    Page 60 of 62

will be a long-term capital gain or loss if the creditor's holding period for the Claim surrendered exceeds one (1) year at the time of the exchange.

### 3. Payments attributable to Interest.

A creditor not previously required to include in its taxable income any accrued but unpaid interest on a Claim may be treated as receiving taxable interest, to the extent the Cash it receives pursuant to the Plan is allocable to such accrued but unpaid interest. A creditor previously required to include in its taxable income any accrued but unpaid interest on a Claim may be entitled to recognize a deductible loss, to the extent the amount of interest actually received by the creditor is less than the amount of interest taken into income by the creditor.

## D. Information Reporting and Backup Withholding

Under the backup withholding rules of the Internal Revenue Code, creditors may be subject to backup withholding at the rate of twenty-eight percent (28%) with respect to payments made pursuant to the Plan unless such creditor (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the creditor's federal income tax liability. Creditors may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

## XIV. RECOMMENDATIONS AND CONCLUSION

THE DEBTOR BELIEVES THAT THE PLAN'S CONFIRMATION IS IN THE BEST INTERESTS OF THE DEBTOR, THE ESTATE, AND CREDITORS. FOR THESE REASONS THE DEBTOR RECOMMENDS THAT YOU SUPPORT CONFIRMATION, EVEN THOUGH NO VOTES ARE BEING SOLICITED ON THE PLAN, OTHER THAN THE VOTES TO BE SOLICITED FROM CLASS 1.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

Dated:   December 23, 2009                    BAKER & McKENZIE LLP


By: /s/ Ali M.M. Mojdehi
     Ali M.M. Mojdehi
     Janet D. Gertz
     Counsel for Debtor
     Asyst Technologies, Inc.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92128
+1 858 523 6200